# HOHN *v.* UNITED STATES

No. 96–8986.   Argued March 3, 1998—Decided June 15, 1998

KENNEDY, J., delivered the opinion of the Court, in which STEVENS, SOUTER, GINSBURG, and BREYER, JJ., joined. SOUTER, J., filed a concurring opinion, *post*, p. 253. SCALIA, J., filed a dissenting opinion, in which REHNQUIST, C. J., and O'CONNOR and THOMAS, JJ., joined, *post*, p. 254.

*Eileen Penner* argued the cause for petitioner. With her on the briefs was *Alan Untereiner.*

*Matthew D. Roberts* argued the cause for the United States. With him on the briefs were *Solicitor General Waxman, Acting Assistant Attorney General Keeney,* and *Deputy Solicitor General Dreeben.*

*Jeffrey S. Sutton,* by invitation of the Court, 522 U. S. 944, argued the cause and filed a brief as *amicus curiae.**

JUSTICE KENNEDY delivered the opinion of the Court.

We granted certiorari to determine whether the Court has jurisdiction to review decisions of the courts of appeals deny-

---

*Briefs of *amici curiae* were filed for the State of California et al. by *Daniel E. Lungren,* Attorney General of California, *George H. Williamson,* Chief Assistant Attorney General, *Robert R. Anderson,* Senior Assistant Attorney General, and *Eric L. Christoffersen* and *Ward A. Campbell,* Deputy Attorneys General, and by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *Winston Bryant* of Arkansas, *Gale A. Norton* of Colorado, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Margery S. Bronster* of Hawaii, *James E. Ryan* of Illinois, *Jeffrey A. Modisett* of Indiana, *Richard P. Ieyoub* of Louisiana, *Michael C. Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Dennis C. Vacco* of New York, *W. A. Drew Edmondson* of Oklahoma, *D. Michael Fisher* of Pennsylvania, *Jeffrey B. Pine* of Rhode Island, *Mark Barnett* of South Dakota, *John Knox Walkup* of Tennessee, *Jan Graham* of Utah, *Mark L. Earley* of Virginia, and *William U. Hill* of Wyoming; and for the National Association of Criminal Defense Lawyers by *Edward M. Chikofsky* and *Lisa Kemler.*

ing applications for certificates of appealability. The Court, we hold, does have jurisdiction.

## I

In 1992, petitioner Arnold Hohn was charged with a number of drug-related offenses, including the use or carrying of a firearm during and in relation to a drug trafficking offense, 18 U. S. C. § 924(c)(1). Over defense counsel's objection, the District Court instructed the jury that "use" of a firearm meant having the firearm "available to aid in the commission of" the offense. App. 7, 32. The jury convicted Hohn on all counts. Hohn did not challenge the instruction in his direct appeal, and the Court of Appeals affirmed. *United States* v. *Hohn*, 8 F. 3d 1301 (CA8 1993).

Two years after Hohn's conviction became final, we held the term "use" in § 924(c)(1) required active employment of the firearm. Proximity and accessibility alone were not sufficient. *Bailey* v. *United States*, 516 U. S. 137 (1995). Hohn filed a *pro se* motion under 28 U. S. C. § 2255 to vacate his 18 U. S. C. § 924(c)(1) conviction in light of *Bailey* on the grounds the evidence presented at his trial was insufficient to prove use of a firearm. Although the Government conceded the jury instruction given at Hohn's trial did not comply with *Bailey*, the District Court denied relief because, in its view, Hohn had waived the claim by failing to challenge the instruction on direct appeal.

While Hohn's motion was pending before the District Court, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214. Section 102 of AEDPA amends the statutory provision which had required state prisoners to obtain a certificate of probable cause before appealing the denial of a habeas petition. The amended provision provides:

> "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

"(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

"(B) the final order in a proceeding under section 2255." 28 U. S. C. § 2253(c)(1) (1994 ed., Supp. II).

Certificates of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2).

Hohn filed a notice of appeal on July 29, 1996, three months after AEDPA's enactment. The Court of Appeals treated the notice of appeal as an application for a certificate of appealability and referred it to a three-judge panel. The panel decided Hohn's application did not meet the standard for a § 2253(c) certificate. In the panel's view, *Bailey* did no more than interpret a statute, and an incorrect application of a statute by a district court, or any other court, does not violate the Constitution." 99 F. 3d 892, 893 (CA8 1996). Given this determination, the panel declined to issue a certificate of appealability.

Judge McMillian dissented. In his view, *Bailey* cast doubt on whether Hohn's conduct in fact violated 18 U. S. C. § 924(c)(1). The Due Process Clause, he reasoned, does not "tolerat[e] convictions for conduct that was never criminal," so Hohn had made a sufficient showing of a constitutional deprivation. 99 F. 3d, at 895. When the Court of Appeals denied Hohn's rehearing petition and a suggestion for rehearing en banc, four judges noted they would have granted the suggestion.

Hohn petitioned this Court for a writ of certiorari to review the denial of the certificate, seeking to invoke our jurisdiction under 28 U. S. C. § 1254(1). The Government now found itself in agreement with Hohn, saying his claim was, in fact, constitutional in nature. It asked us to vacate the judgment and remand so the Court of Appeals could reconsider in light of this concession. We may not vacate and remand, of course, unless we first have jurisdiction over the

case; and since Hohn and the Government both argue in favor of our jurisdiction, we appointed an *amicus curiae* to argue the contrary position. 522 U. S. 944 (1997).

## II

Title 28 U. S. C. § 1254 is the statute most often invoked for jurisdiction in this Court. It provides in relevant part:

> "Cases in the courts of appeals may be reviewed by the Supreme Court by the following methods:
> "(1) By writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree."

The first phrase of the quoted statute confines our jurisdiction to "[c]ases in" the courts of appeals. *Nixon* v. *Fitzgerald*, 457 U. S. 731, 741–742 (1982). The question is whether an application for a certificate meets the description.

There can be little doubt that Hohn's application for a certificate of appealability constitutes a case under § 1254(1). As we have noted, "[t]he words 'case' and 'cause' are constantly used as synonyms in statutes . . . , each meaning a proceeding in court, a suit, or action." *Blyew* v. *United States*, 13 Wall. 581, 595 (1872). The dispute over Hohn's entitlement to a certificate falls within this definition. It is a proceeding seeking relief for an immediate and redressable injury, *i. e.*, wrongful detention in violation of the Constitution. There is adversity as well as the other requisite qualities of a "case" as the term is used in both Article III of the Constitution and the statute here under consideration. This is significant, we think, for cases are addressed in the ordinary course of the judicial process, and, as a general rule, when the district court has denied relief and applicable requirements of finality have been satisfied, the next step is review in the court of appeals. That the statute permits the certificate to be issued by a "circuit justice or judge" does not mean the action of the circuit judge in denying the cer-

tificate is his or her own action, rather than the action of the court of appeals to whom the judge is appointed.

The course of events here illustrates the point. The application moved through the Eighth Circuit in the same manner as cases in general do. The matter was entered on the docket of the Court of Appeals, submitted to a panel, and decided in a published opinion, including a dissent. App. 4–5. The court entered judgment on it, issued a mandate, and entertained a petition for rehearing and suggestion for rehearing en banc. *Id.*, at 5–6. The Eighth Circuit has since acknowledged its rejection of Hohn's application made Circuit law. *United States* v. *Apker*, 101 F. 3d 75 (CA8 1996), cert. pending, No. 97–5460. One judge specifically indicated he was bound by the decision even though he believed it was wrongly decided. 101 F. 3d, at 75–76 (Henley, J., concurring in result). These factors suggest Hohn's certificate application was as much a case in the Court of Appeals as are the other matters decided by it.

We also draw guidance from the fact that every Court of Appeals except the Court of Appeals for the District of Columbia Circuit has adopted Rules to govern the disposition of certificate applications. *E. g.*, Rules 22, 22.1 (CA1 1998); Rules 22, 27(b) and (f) (CA2 1998); Rules 3.4, 22.1, 111.3(b) and (c), 111.4(a) and (b)(vii) (CA3 1998); Rules 22(a) and (b)(3)(g), 34(b) (CA4 1998); Rules 8.1(g), 8.6, 8.10, 22, 27.2.3 (CA5 1998); Rules 28(f), (g), and (j) (CA6 1998); Rules 22(a)(2), (h)(2), and (h)(3)(i), 22.1 (CA7 1998); Rules 22A(d), 27B(b)(2) and (c)(2) (CA8 1998); Rules 3–1(b), 22–2, 22–3(a)(3) and (b)(4), 22–4(c), 22–5(c), (d)(1), (d)(3), and (e) (CA9 1998); Rules 11.2(b), 22.1, 22.2.3 (CA10 1998); Rules 22–1, 22–3(a)(3), (a)(4), (a)(6), and (a)(7), and (b), 27–1(d)(3) (CA11 1998). We also note the Internal Operating Procedures for the Court of Appeals for the Eighth Circuit require certificate applications to be heard as a general matter by three-judge administrative panels. Internal Operating Procedures, pt. I.D.3 (1998); see also Interim Processing Guidelines for Certifi-

cates of Appealability under 28 U. S. C. § 2253 and for Motions under 28 U. S. C. § 2244, pt. I (CA1), 28 U. S. C. A., p. 135 (1998 Pamphlet); Internal Operating Procedures 10.3.2, 15.1 (CA3 1998); Criminal Justice Act Implementation Plan, pt. I.2 (CA4), 28 U. S. C. A., p. 576 (1998 Pamphlet); Internal Operating Procedures 1(a)(1) and (c)(7) (CA7 1998); Rule 27–1, Advisory Committee Note (1) (CA9), 28 U. S. C. A., p. 290 (1998 Pamphlet); Emergency General Order in re Procedures Regarding the Prison Litigation Reform Act and the Antiterrorism and Effective Death Penalty Act (CA10), 28 U. S. C. A., p. 487 (1998 Pamphlet); Internal Operating Procedure 11, following Rule 47–6 (CA11 1998). These directives would be meaningless if applications for certificates of appealability were not matters subject to the control and disposition of the courts of appeals.

It is true the President appoints "circuit judges for the several circuits," 28 U. S. C. § 44, but it is true as well the court of appeals "consist[s] of the circuit judges of the circuit in regular active service," § 43. In this instance, as in all other cases of which we are aware, the order denying the certificate was issued in the name of the court and under its seal. That is as it should be, for the order was judicial in character and had consequences with respect to the finality of the order of the District Court and the continuing jurisdiction of the Court of Appeals.

The Federal Rules of Appellate Procedure make specific provision for consideration of applications for certificates of appealability by the entire court. Rule 22(b) states:

"In a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court, an appeal by the applicant for the writ may not proceed unless a district or a circuit judge issues a certificate of appealability pursuant to section 2253(c) of title 28, United States Code. . . . If the district judge has denied the certificate, the applicant for the writ may then request issuance of the certificate by a circuit

judge. If such a request is addressed to the court of appeals, it shall be deemed addressed to the judges thereof and shall be considered by a circuit judge or judges as the court deems appropriate. If no express request for a certificate is filed, the notice of appeal shall be deemed to constitute a request addressed to the judges of the court of appeals."

On its face, the Rule applies only to state, and not federal, prisoners. It is nonetheless instructive on the proper construction of § 2253(c).

Rule 22(b) by no means prohibits application to an individual judge, nor could it, given the language of the statute. There would be incongruity, nevertheless, were the same ruling deemed in one instance the order of a judge acting *ex curia* and in a second the action of the court, depending upon the caption of the application or the style of the order.

Our conclusion is further confirmed by Federal Rule of Appellate Procedure 27(c). It states:

"In addition to the authority expressly conferred by these rules or by law, a single judge of a court of appeals may entertain and may grant or deny any request for relief which under these rules may properly be sought by motion, except that a single judge may not dismiss or otherwise determine an appeal or other proceeding, and except that a court of appeals may provide by order or rule that any motion or class of motions must be acted upon by the court. The action of a single judge may be reviewed by the court."

As the Rule makes clear, even when individual judges are authorized under the Rules to entertain certain requests for relief, the court may review their decisions. The Eighth Circuit's Rules are even more explicit, specifically listing grants of certificates of probable cause by an individual judge as one of the decisions subject to revision by the court under Federal Rule 27(c). Rule 27B(b)(2) (CA8 1998). The recog-

nition that decisions made by individual circuit judges remain subject to correction by the entire court of appeals reinforces our determination that decisions with regard to an application for a certificate of appealability should be regarded as an action of the court itself and not of the individual judge. We must reject the suggestion contained in the Advisory Committee's Notes on Federal Rule of Appellate Procedure 22(b) that "28 U. S. C. § 2253 does not authorize the court of appeals as a court to grant a certificate of probable cause." 28 U. S. C. App., p. 609. It is more consistent with the Federal Rules and the uniform practice of the courts of appeals to construe § 2253(c)(1) as conferring the jurisdiction to issue certificates of appealability upon the court of appeals rather than by a judge acting under his or her own seal. See *In re Burwell*, 350 U. S. 521, 522 (1956).

Some early cases from this Court acknowledged a distinction between acting in an administrative and a judicial capacity. When judges perform administrative functions, their decisions are not subject to our review. *United States* v. *Ferreira*, 13 How. 40, 51–52 (1852); see also *Gordon* v. *United States*, 117 U. S. Appx. 697, 702, 704 (1864). Those opinions were careful to say it was the nonjudicial character of the judges' actions which deprived this Court of jurisdiction. *Ferreira, supra,* at 46–47 (tribunal not judicial when the proceedings were *ex parte* and did not involve the issuance of process, summoning of witnesses, or entry of a judgment); *Gordon, supra,* at 699, 702 (tribunal not judicial when it lacks power to enter and enforce judgments). Decisions regarding applications for certificates of appealability, in contrast, are judicial in nature. It is typical for both parties to enter appearances and to submit briefs at appropriate times and for the court of appeals to enter a judgment and to issue a mandate at the end of the proceedings, as happened here. App. 4–6. Construing the issuance of a certificate of appealability as an administrative function, moreover, would suggest an entity not wielding judicial power might review the

decision of an Article III court. In light of the constitutional questions which would surround such an arrangement, see *Gordon, supra; Hayburn's Case,* 2 Dall. 409 (1792), we should avoid any such implication.

We further disagree with the contention, advanced by the dissent and by Court-appointed *amicus,* that a request to proceed before a court of appeals should be regarded as a threshold inquiry separate from the merits which, if denied, prevents the case from ever being in the court of appeals. Precedent forecloses this argument. In *Ex parte Quirin,* 317 U. S. 1 (1942), we confronted the analogous question whether a request for leave to file a petition for a writ of habeas corpus was a case in a district court for the purposes of the then-extant statute governing court of appeals review of district court decisions. See 28 U. S. C. § 225(a) First (1940 ed.) (courts of appeals had jurisdiction to review final decisions "[i]n the district courts, in all cases save where a direct review of the decision may be had in the Supreme Court"). We held the request for leave constituted a case in the district court over which the court of appeals could assert jurisdiction, even though the district court had denied the request. We reasoned, "[p]resentation of the petition for judicial action is the institution of a suit. Hence the denial by the district court of leave to file the petitions in these causes was the judicial determination of a case or controversy, reviewable on appeal to the Court of Appeals." 317 U. S., at 24.

We reached a similar conclusion in *Nixon* v. *Fitzgerald.* There President Nixon sought to appeal an interlocutory District Court order rejecting his claim of absolute immunity. The Court of Appeals summarily dismissed the appeal because, in its view, the order failed to present a "serious and unsettled question" of law sufficient to bring the case within the collateral order doctrine announced in *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541, 547 (1949). Because the Court of Appeals had dismissed for failure to

satisfy this threshold jurisdictional requirement, respondent Fitzgerald argued, "the District Court's order was not an appealable 'case' properly 'in' the Court of Appeals within the meaning of § 1254." 457 U. S., at 742. Turning aside this argument, we ruled "petitioner did present a 'serious and unsettled' and therefore appealable question to the Court of Appeals. It follow[ed] that the case was 'in' the Court of Appeals under § 1254 and properly within our certiorari jurisdiction." *Id.*, at 743. We elaborated: "There can be no serious doubt concerning our power to review a court of appeals' decision to dismiss for lack of jurisdiction . . . . If we lacked authority to do so, decisions to dismiss for want of jurisdiction would be insulated entirely from review by this Court." *Id.*, at 743, n. 23; see also *United States* v. *Nixon,* 418 U. S. 683, 692 (1974) (holding appeal of District Court's denial of motion to quash *subpoena duces tecum* was in the Court of Appeals for purposes of § 1254(1)).

We have shown no doubts about our jurisdiction to review dismissals by the Courts of Appeals for failure to file a timely notice of appeal under § 1254(1). The filing of a proper notice of appeal is mandatory and jurisdictional. *Torres* v. *Oakland Scavenger Co.,* 487 U. S. 312, 315 (1988); *United States* v. *Robinson,* 361 U. S. 220, 224 (1960); Advisory Committee's Notes on Fed. Rule App. Proc. 3, 28 U. S. C. App., p. 589. The failure to satisfy this jurisdictional prerequisite has not kept the case from entering the Court of Appeals, however. We have reviewed these dismissals often and without insisting the petitioner satisfy the requirements for an extraordinary writ and without suggesting our lack of jurisdiction to do so. *E. g., Houston* v. *Lack,* 487 U. S. 266 (1988); *Torres, supra; Fallen* v. *United States,* 378 U. S. 139 (1964); *United States* v. *Robinson, supra; Leishman* v. *Associated Wholesale Elec. Co.,* 318 U. S. 203 (1943).

We have also held that § 1254(1) permits us to review denials of motions for leave to intervene in the Court of Appeals in proceedings to review the decision of an administra-

tive agency. *Automobile Workers* v. *Scofield,* 382 U. S. 205, 208–209 (1965); see also *Izumi Seimitsu Kogyo Kabushiki Kaisha* v. *U. S. Philips Corp.,* 510 U. S. 27, 30 (1993) *(per curiam).* Together these decisions foreclose the proposition that the failure to satisfy a threshold prerequisite for court of appeals jurisdiction, such as the issuance of a certificate of appealability, prevents a case from being in the court of appeals for purposes of § 1254(1).

It would have made no difference had the Government declined to oppose Hohn's application for a certificate of appealability. In *Scofield,* we held that § 1254(1) gave us jurisdiction to review the Court of Appeals' denial of a motion for leave to intervene despite the fact that neither the agency nor any of the other parties opposed intervention. 382 U. S., at 207. In the same manner, petitions for certiorari to this Court are often met with silence or even acquiescence; yet no one would suggest this deprives the petitions of the adversity needed to constitute a case. Assuming, of course, the underlying action satisfies the other requisites of a case, including injury in fact, the circumstance that the question before the court is a preliminary issue, such as the denial of a certificate of appealability or venue, does not oust appellate courts of the jurisdiction to review a ruling on the matter. For instance, a case does not lack adversity simply because the remedy sought from a particular court is dismissal for improper venue rather than resolution of the merits. Federal Rule of Civil Procedure 12(b)(3) specifically permits a party to move to dismiss for improper venue before joining issue on any substantive point through the filing of a responsive pleading, and we have long treated appeals of dismissals for improper venue as cases in the courts of appeals, see, *e. g., Radzanower* v. *Touche Ross & Co.,* 426 U. S. 148, 151 (1976); *Brunette Machine Works, Ltd.* v. *Kockum Industries, Inc.,* 406 U. S. 706, 707 (1972); *Schnell* v. *Peter Eckrich & Sons, Inc.,* 365 U. S. 260, 261 (1961); *Fourco Glass Co.* v. *Transmirra Products Corp.,* 353 U. S. 222, 223 (1957); *Mis-*

*sissippi Publishing Corp.* v. *Murphree,* 326 U. S. 438, 440 (1946). It is true we have held appellate jurisdiction improper when district courts have denied, rather than granted, motions to dismiss for improper venue. The jurisdictional problem in those cases, however, was the interlocutory nature of the appeal, not the absence of a proper case. *Lauro Lines s.r.l.* v. *Chasser,* 490 U. S. 495 (1989); *Van Cauwenberghe* v. *Biard,* 486 U. S. 517 (1988). In any event, concerns about adversity are misplaced in this case. Here the Government entered an appearance in response to the initial application and filed a response opposing Hohn's petition for rehearing and suggestion for rehearing en banc. App. 4, 5.

The argument that this Court lacks jurisdiction under § 1254(1) to review threshold jurisdictional inquiries is further refuted by the recent amendment to 28 U. S. C. § 2244(b)(3). The statute requires state prisoners filing second or successive habeas applications under § 2254 to first "move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U. S. C. § 2244(b)(3)(A) (1994 ed., Supp. II). The statute further provides "[t]he grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." § 2244(b)(3)(E). It would have been unnecessary to include a provision barring certiorari review if a motion to file a second or successive application would not otherwise have constituted a case in the court of appeals for purposes of 28 U. S. C. § 1254(1). We are reluctant to adopt a construction making another statutory provision superfluous. See, *e. g., Kawaauhau* v. *Geiger,* 523 U. S. 57, 62 (1998); *United States* v. *Menasche,* 348 U. S. 528, 538–539 (1955).

Inclusion of a specific provision barring certiorari review of denials of motions to file second or successive applications is instructive for another reason. The requirements for cer-

tificates of appealability and motions for second or successive applications were enacted in the same statute. The clear limit on this Court's jurisdiction to review denials of motions to file second or successive petitions by writ of certiorari contrasts with the absence of an analogous limitation to certiorari review of denials of applications for certificates of appealability. True, the phrase concerning the grant or denial of second or successive applications refers to an action "by a court of appeals"; still, we think a Congress concerned enough to bar our jurisdiction in one instance would have been just as explicit in denying it in the other, were that its intention. See, *e. g., Bates* v. *United States,* 522 U. S. 23, 29–30 (1997) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'") (quoting *Russello* v. *United States,* 464 U. S. 16, 23 (1983) (other internal quotation marks omitted)). The dissent claims the absence of similar language in § 2253(c) can be explained by Congress' reliance on the rule holding certificate applications unreviewable under § 1254(1). *Post,* at 261–262. As we later discuss, any such reliance is lessened by the Court's consistent practice of treating denials of certificate applications as falling within its statutory certiorari jurisdiction. See *infra,* at 252.

Today's holding conforms our commonsense practice to the statutory scheme, making it unnecessary to invoke our extraordinary jurisdiction in routine cases, which present important and meritorious claims. The United States does not dispute that Hohn's claim has considerable merit and acknowledges that the trial court committed an error of constitutional magnitude. The only contested issue is whether the constitutional violation was a substantial one. Brief in Opposition 7–8. Were we to adopt the position advanced by the dissent, the only way we could consider his meritorious claim would be through the All Writs Act, 28 U. S. C.

§ 1651(a). Our rule permits us to carry out our normal function of reviewing possible misapplications of law by the courts of appeals without having to resort to extraordinary remedies.

Our decision, we must acknowledge, is in direct conflict with the portion of our decision in *House* v. *Mayo*, 324 U. S. 42, 44 (1945) *(per curiam)*, holding that we lack statutory certiorari jurisdiction to review refusals to issue certificates of probable cause. Given the number and frequency of the cases, and the difficulty of reconciling our practice with a requirement that only an extraordinary writ can be used to address them, we do not think *stare decisis* concerns require us to adhere to that decision. Its conclusion was erroneous, and it should not be followed.

*Stare decisis* is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne* v. *Tennessee*, 501 U. S. 808, 827 (1991). "Considerations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done." *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 172–173 (1989).

We have recognized, however, that *stare decisis* is a "principle of policy" rather than "an inexorable command." *Payne, supra,* at 828. For example, we have felt less constrained to follow precedent where, as here, the opinion was rendered without full briefing or argument. *Gray* v. *Mississippi*, 481 U. S. 648, 651, n. 1 (1987) (questioning the precedential value of *Davis* v. *Georgia*, 429 U. S. 122 (1976) *(per curiam)*). The role of *stare decisis*, furthermore, is "somewhat reduced . . . in the case of a procedural rule . . . which does not serve as a guide to lawful behavior." *United States* v. *Gaudin*, 515 U. S. 506, 521 (1995) (citing *Payne, supra,* at

828). Here we have a rule of procedure that does not alter primary conduct. And what is more, the rule of procedure announced in *House* v. *Mayo* has often been disregarded in our own practice. Both Hohn and the United States cite numerous instances in which we have granted writs of certiorari to review denials of certificate applications without requiring the petitioner to move for leave to file for an extraordinary writ, as previously required by our rules, and without requiring any extraordinary showing or exhibiting any doubts about our jurisdiction to do so. 17 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4036, pp. 15–16 (2d ed. 1988) (collecting cases). Included among these examples are several noteworthy decisions which resolved significant issues of federal law. See, *e. g., Allen* v. *Hardy*, 478 U. S. 255, 257–258 (1986) *(per curiam)* (refusing to permit retroactive application of *Batson* v. *Kentucky*, 476 U. S. 79 (1986), on collateral attack); *Lynce* v. *Mathis*, 519 U. S. 433, 436 (1997) (holding the cancellation of early release credits violated the *Ex Post Facto* Clause). These deviations have led litigants and the legal community to question the vitality of the rule announced in *House* v. *Mayo*. As commentators have observed: "More recent cases . . . have regularly granted certiorari following denial of leave to proceed in forma pauperis, or refusal to certify probable cause, without any indication that review was by common law writ rather than statutory certiorari. At least as to these two questions, statutory certiorari should be available." Wright, Miller, & Cooper, *supra*, at 15–16 (footnotes omitted). Our frequent disregard for the rule announced in *House* v. *Mayo* weakens the suggestion that Congress could have placed significant reliance on it, especially in light of the commentary on our practice in the legal literature.

This is not to say opinions passing on jurisdictional issues *sub silentio* may be said to have overruled an opinion addressing the issue directly. See, *e. g., United States* v. *More*, 3 Cranch 159, 172 (1805) (Marshall, C. J.). Our decisions re-

main binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality. *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U. S. 477, 484 (1989). Once we have decided to reconsider a particular rule, however, we would be remiss if we did not consider the consistency with which it has been applied in practice. *Swift & Co.* v. *Wickham*, 382 U. S. 111, 116 (1965); see also *Brown Shoe Co.* v. *United States*, 370 U. S. 294, 307 (1962). This consideration, when combined with our analysis of the legal issue in question, convinces us the contrary holding of *House* v. *Mayo* cannot stand.

We hold this Court has jurisdiction under § 1254(1) to review denials of applications for certificates of appealability by a circuit judge or a panel of a court of appeals. The portion of *House* v. *Mayo* holding this Court lacks statutory certiorari jurisdiction over denials of certificates of probable cause is overruled. In light of the position asserted by the Solicitor General in the brief for the United States filed August 18, 1997, the judgment of the Court of Appeals is vacated, and the case is remanded for further consideration consistent with this opinion.

*It is so ordered.*

JUSTICE SOUTER, concurring.

I would be content to decide this case on the authority of *House* v. *Mayo*, 324 U. S. 42 (1945) *(per curiam)*, that common-law certiorari is available to review the denial of the certificate, leaving *House*'s precarious future for another day when its precedential value might have to be faced squarely. But that course would command no more than a minority of one, and there is good reason to deny it even that support. *House*'s holding on what may be " 'in' the court of appeals," *id.*, at 44, was virtually unreasoned, and the Court correctly notes our subsequent practice of honoring this rule in the breach. Given the weakness of the precedent, the

advantage of having a clear majority for a rule governing our jurisdiction to reverse erroneous denials of certificates of appealability persuades me to join the others in overruling *House* insofar as it would bear on issuance of a statutory writ of certiorari under 28 U. S. C. § 1254(1).

JUSTICE SCALIA, with whom THE CHIEF JUSTICE, JUSTICE O'CONNOR, and JUSTICE THOMAS join, dissenting.

Today's opinion permits review where Congress, with unmistakable clarity, has denied it. To reach this result, the Court ignores the obvious intent of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104–132, 110 Stat. 1214, distorts the meaning of our own jurisdictional statute, 28 U. S. C. § 1254(1), and overrules a 53-year-old precedent, *House* v. *Mayo*, 324 U. S. 42 (1945) *(per curiam)*. I respectfully dissent.

## I

This Court's jurisdiction under 28 U. S. C. § 1254(1) is limited to "[c]ases in the courts of appeals." Section 102 of AEDPA provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding under section 2255," that is, a district court habeas proceeding challenging federal custody. Petitioner, who is challenging federal custody under 28 U. S. C. § 2255, did not obtain a certificate of appealability (COA). By the plain language of AEDPA, his appeal "from" the district court's "final order" "may not be taken to the court of appeals." Because it could not be taken *to* the Court of Appeals, it quite obviously was never *in* the Court of Appeals; and because it was never in the Court of Appeals, we lack jurisdiction under § 1254(1) to entertain it.

We have already squarely and explicitly endorsed this straightforward interpretation. In *House* v. *Mayo*, 324 U. S., at 44, involving the predecessors to §§ 1254(1) and

2253(c)(1), the statutorily required certificate was called a "certificate of probable cause" rather than a certificate of appealability, but the effect of failure to obtain it was precisely the same: The case could not proceed to the court of appeals. On an attempt to obtain review of denial of the certificate in this Court, we held that since petitioner's "case was never 'in' the court of appeals, for want of a certificate," we lacked jurisdiction under § 1254(1). *Ibid.*

The Court concedes that *House* is squarely on point but opts to overrule it because its "conclusion was erroneous," *ante,* at 251. The Court does not dispute that petitioner's § 2255 action was never in the Court of Appeals; its overruling of *House* is instead based on the proposition that petitioner's request for a COA is, in and of itself, a "case" within the meaning of § 1254(1), see *ante,* at 241–242, 246–249, and that *that* case was "in" the Court of Appeals and hence can be reviewed here, *ante,* at 241–246. Most of the Court's analysis is expended in the effort to establish that petitioner made his request for a COA to the Court of Appeals as such, rather than to the circuit judges in their individual capacity, *ibid.* Even that effort is unsuccessful, since it comes up against the pellucid language of AEDPA to the contrary. Section 102 does not permit application for a COA to a court of appeals; it states that the application must be made to a "circuit justice or judge." That this means precisely what it says is underscored by § 103 of AEDPA, which amends Rule 22 of the Federal Rules of Appellate Procedure: "If [a COA] request is addressed to the court of appeals, it shall be deemed addressed to the judges thereof and shall be considered by a circuit judge or judges as the court deems appropriate." As though drafted in anticipatory refutation of the Court's countertextual holding today, the Advisory Committee's Notes on Rule 22 explicitly state that "28 U. S. C. § 2253 does not authorize the court of appeals as a court to grant a certificate of probable cause." 28 U. S. C. App., p. 609.

Proclaiming the request for a COA to be "in" the Court of Appeals is the most obvious of the Court's statutory distortions, but not the one with the most serious collateral consequences. The latter award goes to the Court's virtually unanalyzed pronouncement (also essential to its holding) that the request for a COA was itself a "case" within the meaning of § 1254(1). The notion that a request pertaining to a case constitutes its own "case" for purposes of § 1254 is a jaw-dropper. To support that remarkable assertion, the Court relies upon circumstantial evidence—that the "application moved through the Eighth Circuit in the same manner as cases in general do." *Ante*, at 242. Does this mean that a request for a COA would *not* be a "case" in those Circuits that treated it differently—that permitted it to be disposed of by a single judge as Rule 22 specifically allows? Does it mean that a motion for recusal, or a request for televised coverage, or a motion to file under seal *would* be a "case" if the court of appeals chose to treat it in the manner the Eighth Circuit treated the request for a COA here? Surely not.

An application for a COA, standing alone, does not have the requisite qualities of a legal "case" under any known definition. It does not assert a grievance against anyone, does not seek remedy or redress for any legal injury, and does not even require a "party" on the other side. It is nothing more than a request for permission to seek review. Petitioner's grievance is with respondent for unlawful custody, and the remedy he seeks is release from that custody pursuant to § 2255. The request for a COA is not some separate "case" that can subsist apart from that underlying suit; it is merely a procedural requirement that must be fulfilled before petitioner's § 2255 action—his "case" or "cause"—can advance to the appellate court. The adversity which the Court acknowledges is needed for a "case" under § 1254, see *ante*, at 241, is not satisfied by the dispute between petitioner and respondent as to whether the COA should be granted—

any more than a "case or controversy" for purposes of initial federal-court jurisdiction is created by a dispute over venue, between parties who agree on everything else.[1]

As is true with most erroneous theories, a logical and consistent application of the Court's reasoning yields strange results. If dispute over the propriety of granting a COA creates a "case," the denial of a COA request that has been unopposed (or, better yet, has been supported by the Government) will be unreviewable, whereas denial of a request that is vigorously opposed will be reviewed—surely an upside-down result. And the "case" concerning the COA will subsist even when the § 2255 suit has been mooted by the petitioner's release from prison. These bizarre consequences follow inevitably from the Court's "separate case" theory, which has been fabricated in order to achieve a result that is fundamentally at odds with the purpose of the statute. For the Court insists upon assuming, contrary to the plain import of the statute, that Congress wanted petitioner's § 2255 action to proceed "in the ordinary course of the judicial process" and to follow the "general rule" that permits an appeal from a final district court order, *ibid.* If this were Congress's wish, there would have been no need for § 102 of AEDPA. The *whole point* of that provision is to *diverge* from the ordinary course of the judicial process and to keep petitioner's case against respondent out of the Court of Appeals unless petitioner obtains a COA. "The certificate is a screening device, helping to conserve judicial (and prosecutorial) resources." *Young* v. *United States*, 124 F. 3d 794, 799

---

[1] The Court has no response to this. Its observation that a dispute over venue is not unreviewable simply because it is preliminary, *ante*, at 248–249, is accurate but irrelevant. The issue is not whether a venue dispute may be reviewed *at all*, but whether it may be reviewed in isolation from some case of which it is a part. It may not, because a venue dispute, standing alone—like a request for a COA, standing alone—lacks the requisite qualities of a case. If the entire § 2255 proceeding was not "in" the Court of Appeals, the COA request alone was not a "case" that § 1254 authorizes us to review.

(CA7 1997). It is this unique screening function that distinguishes a COA from the jurisdictional issues discussed by the Court: Section 102 of AEDPA prevents petitioner's case from entering the Court of Appeals *at all* in the absence of a COA, whereas other jurisdictional determinations are made after a case is in the Court of Appeals (even if the case is later dismissed because of jurisdictional defects), *ante,* at 246–249. See *Rosado* v. *Wyman,* 397 U. S. 397, 403, n. 3 (1970) (a court always has jurisdiction to determine its jurisdiction).

The Court's only response to these arguments is that they are foreclosed by our precedent, since we decided an analogous issue in *Ex parte Quirin,* 317 U. S. 1 (1942). *Ante,* at 246. (The Court displays no appreciation of the delicious irony involved in its insistence upon hewing to an allegedly analogous decision while overruling the case directly in point, *House.*) *Quirin* held that a petition for habeas corpus constituted the institution of a suit, and that it was not necessary for the writ to issue for the matter to be considered a case or controversy. 317 U. S., at 24. *Quirin* relied upon our decision in *Ex parte Milligan,* 4 Wall. 2, 110–113 (1866), which reasoned that a petition for habeas corpus is a suit because the petitioner seeks " 'that remedy which the law affords him' " to recover his liberty. *Id.,* at 113 (quoting *Weston* v. *City Council of Charleston,* 2 Pet. 449, 464 (1829)). Petitioner's request for § 2255 relief is analogous to a petition for habeas corpus, but his request for a COA is of a wholly different nature. That is no "remedy" for any harm, but a threshold procedural requirement that petitioner must meet in order to carry his § 2255 suit to the appellate stage. That is why the Court in *House,* decided less than three years after *Quirin,* did not treat the application for a certificate as a separate case but did recognize the petition for habeas corpus as a case even though it was decided without a hearing or a call for a return. 324 U. S., at 43.

I have described above why *House* was entirely correct, but a few words are in order concerning the inappropriate-

ness of overruling *House*, regardless of its virtue as an original matter. "[T]he burden borne by the party advocating abandonment of an established precedent is greater where the Court is asked to overrule a point of statutory construction." *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 172–173 (1989); see also *Illinois Brick Co.* v. *Illinois*, 431 U. S. 720, 736 (1977); *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393, 406 (1932) (Brandeis, J., dissenting). The Court acknowledges this principle, but invokes cases of ours that say that *stare decisis* concerns are " 'somewhat reduced' " in the case of a procedural rule. *Ante*, at 251. The basis for that principle, of course, is that procedural rules do not *ordinarily* engender detrimental reliance—and in this case, as I shall discuss, detrimental reliance by the Congress of the United States is self-evident. In any event, even those cases cited by the Court as applying the "somewhat reduced" standard to procedural holdings still felt the need to set forth special factors justifying the overruling. *United States* v. *Gaudin*, 515 U. S. 506, 521 (1995), concluded that "the decision in question had been proved manifestly erroneous, and its underpinnings eroded, by subsequent decisions of this Court"; and *Payne* v. *Tennessee*, 501 U. S. 808, 828–830 (1991), noted that the overruled cases had been "decided by the narrowest of margins, over spirited dissents challenging [their] basic underpinnings," had been "questioned by Members of the Court in later decisions," and had "defied consistent application by the lower courts."

The Court's next excuse is that *House* was decided without full briefing or argument. The sole precedent it cites for the proposition that this makes a difference is *Gray* v. *Mississippi*, 481 U. S. 648, 651, n. 1 (1987). *Gray*, however, did not *deny stare decisis* effect to an opinion rendered without full briefing and argument—it *accorded stare decisis* effect. *Id.*, at 666–667. What the Court relies upon is the mere dictum, rendered in the course of this opinion (and dictum in a footnote, at that), that "summary action here does not have the

same precedential effect as does a case decided upon full briefing and argument." *Id.*, at 651, n. 1. But the sole authority cited for that dictum was *Edelman* v. *Jordan*, 415 U. S. 651 (1974), which declined to give *stare decisis* effect, *not* to opinions that had been issued without briefing and argument, but to *judgments that had been issued without opinion*—"summary affirmances" that did not "contain any substantive discussion" of the point at issue or any other point, *id.*, at 670–671. Such judgments, affirming without comment the disposition appealed from, were common in the days when this Court had an extensive mandatory jurisdiction; they carried little more weight than denials of certiorari. *House*, by contrast, was a six-page opinion with substantive discussion on the point at issue here. It reasoned: (1) "Our authority . . . extends only to cases 'in a circuit court of appeals . . . .' " (2) "Here the case was never 'in' the court of appeals," because of (3) "want of a certificate of probable cause." 324 U. S., at 44.[2] And it cited as authority *Ferguson* v. *District of Columbia*, 270 U. S. 633 (1926). The new rule that the Court today announces—that our opinions rendered without full briefing and argument (hitherto thought to be the strongest indication of certainty in the outcome) have a diminished *stare decisis* effect—may well turn out to be the principal point for which the present opinion will be remembered. It can be expected to affect the treatment of many significant *per curiam* opinions by the lower courts, and the willingness of Justices to undertake summary disposition in the future.

---

[2] The concurrence asserts that this analysis was "virtually unreasoned." *Ante*, at 253 (opinion of SOUTER, J.). It seems to me, to the contrary, that there was virtually nothing more to be said. Not until today has anyone thought that a "case" could consist of a disembodied request to appeal. The concurrence joins the Court in relying upon a truly eccentric argument, and then blames the *House* Court for not discussing this eccentricity at length.

Of course even if one accepts that the two factors the Court alludes to (procedural ruling plus absence of full briefing or argument) reduce *House's stare decisis* effect, one must still acknowledge that its *stare decisis* effect is *increased* by the fact that it was a statutory holding. The Court does not contend that *stare decisis* is utterly inapplicable, and so it must come up with *some* reason for ignoring it. Its reason is that we have "disregarded" *House* in practice. *Ante,* at 252. The opinions it cites for this proposition, however, not only fail to mention *House;* they fail to mention the jurisdictional issue to which *House* pertains. And "we have repeatedly held that the existence of unaddressed jurisdictional defects has *no precedential effect." Lewis* v. *Casey,* 518 U. S. 343, 352, n. 2 (1996) (emphasis added). Surely it constitutes "precedential effect" to reduce the *stare decisis* effect of one of the Court's holdings. It is significant, moreover, that when Members of the Court *have* discussed *House* or the jurisdictional effect of a COA denial, they have agreed that jurisdiction is not available under § 1254. See *Davis* v. *Jacobs,* 454 U. S. 911, 912 (1981) (STEVENS, J., respecting denial of certiorari); *id.,* at 916–917 (REHNQUIST, J., joined by Burger, C. J., and Powell, J., dissenting); *Jeffries* v. *Barksdale,* 453 U. S. 914, 915–916 (1981) (REHNQUIST, J., joined by Burger, C. J., and Powell, J., dissenting). The Court's new approach to unaddressed jurisdictional defects is perhaps the second point for which the present opinion will be remembered.

While there is scant reason for denying *stare decisis* effect to *House,* there is special reason for according it: the reliance of Congress upon an unrepudiated decision central to the procedural scheme it was creating. Section 102 of AEDPA continues a long tradition of provisions enacted by Congress that limit appellate review of petitions. In 1908, Congress required a certificate of probable cause in habeas corpus cases involving state prisoners before an appeal would lie to

this Court, see Act of Mar. 10, 1908, ch. 76, 35 Stat. 40. In 1925, this requirement was extended to intermediate appellate proceedings, see Act of Feb. 13, 1925, ch. 229, §§ 6(d), 13, 43 Stat. 940, 942. Before 1925, this Court readily concluded it had no jurisdiction over appeals brought before it in the absence of a certificate, see, *e. g.*, *Bilik* v. *Strassheim*, 212 U. S. 551 (1908); *Ex parte Patrick*, 212 U. S. 555 (1908), and *House* interpreted the 1925 amendment to produce the same effect in the courts of appeals and, consequently, in this Court under the predecessor to § 1254(1). Quite obviously, with *House* on the books—neither overruled nor even *cited* in the later opinions that the Court claims "disregarded" it— Congress presumably anticipated that § 102 of AEDPA would be interpreted in the same manner.[3] In yet another striking departure from our ordinary practice, the Court qualifies the rule that statutes are deemed to adopt the extant holdings of this Court, see *Keene Corp.* v. *United States*, 508 U. S. 200, 212 (1993): They will *not* be deemed to adopt them, the Court says, when legal commentators "question

---

[3] The Court points to the fact that another provision of AEDPA, which requires court of appeals authorization before a state prisoner can file a second or successive habeas petition in district court, specifically states that the denial of the authorization "shall not be appealable and shall not be the subject of a petition . . . for a writ of certiorari." 28 U. S. C. § 2244(b)(3)(E) (1994 ed., Supp. II). This provision, the Court says, would be rendered "superfluous" if we followed *House, ante,* at 249. That is not so. Section 2244(b)(3) addresses whether there will be district-court consideration of a second or successive petition *at all,* not whether the district court's consideration may be reviewed by an appellate court. Only the latter is covered by the holding of *House.* It is true enough that the reasoning of *House,* if carried over to the other question, would produce the same result; but Congress's specification of that result when there is no Supreme Court holding precisely in point would more accurately be described as cautious than superfluous. Indeed, the greater relevance of § 2244(b)(3) to the question before us is this: It would be exceedingly strange to foreclose certiorari review of the denial of *all* federal intervention, as that provision does, while *according* certiorari review of the denial of appeal from the federal district court to the court of appeals.

the vitality" of the holdings. *Ante,* at 252. The confusion that will be introduced by this new approach is obvious.

At bottom, the only justification for the Court's holding— and the only one that prompts the concurrence to overrule *House*—is convenience: it "permits us to carry out our normal function" of appellate review. *Ante,* at 251. Our "normal" function of appellate review, however, is no more and no less than what Congress says it is. U. S. Const., Art. III, § 2. The Court's defiance of the scheme created by Congress in evident reliance on our precedent is a display not of "common sense," *ante,* at 250, but of judicial willfulness. And a doctrine of *stare decisis* that is suspended when five Justices find it inconvenient (or indeed, as the concurrence suggests, even four Justices in search of a fifth) is no doctrine at all, but simply an excuse for adhering to cases we like and abandoning those we do not.

## II

Since I find no jurisdiction under § 1254(1), I must address the Government's further argument that we can issue a common-law writ of certiorari under the All Writs Act, 28 U. S. C. § 1651. The All Writs Act provides that "[t]he Supreme Court . . . may issue all writs necessary or appropriate in aid of [its] jurisdictio[n] and agreeable to the usages and principles of law." As expressly noted in this Court's Rule 20.1, issuance of a writ under § 1651 "is not a matter of right, but of discretion sparingly exercised," and "[t]o justify the granting of any such writ, the petition must show that the writ will be in aid of the Court's appellate jurisdiction, that exceptional circumstances warrant the exercise of the Court's discretionary powers, and that adequate relief cannot be obtained in any other form or from any other court."

Petitioner (who filed a petition for a writ of certiorari under § 1254(1), not under the All Writs Act, Pet. for Cert. 1) has failed to establish that he meets these requirements. To begin with, he has not shown that adequate relief is unobtainable in any form or from any other court. AEDPA dif-

fers from the gatekeeping statute at issue in *House* in a crucial respect: when *House* was decided, claimants could seek certificates of probable cause only from "the United States court by which the final decision was rendered or a judge of the circuit court of appeals," 28 U. S. C. § 466 (1940 ed.), whereas § 102 of AEDPA permits claimants to seek COA's from a "circuit *justice* or judge." Because petitioner may obtain the relief he seeks from a circuit justice, relief under the All Writs Act is not "necessary."

Relief under the Act is also not "appropriate." The only circumstance alleged by petitioner to justify relief is that the Eighth Circuit erroneously concluded that he failed to present a substantial constitutional question. There is nothing "exceptional" about this claim; it is in fact the same claim available to *every* petitioner when a COA is denied, and entertaining it would render application for this "extraordinary" writ utterly routine. Issuance of the writ is not "appropriate" for another reason as well: It would frustrate the purpose of AEDPA, which is to prevent review unless a COA is granted. "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pennsylvania Bureau of Correction* v. *United States Marshals Service*, 474 U. S. 34, 43 (1985).[4]

*    *    *

The purpose of AEDPA is not obscure. It was to eliminate the interminable delays in the execution of state and federal criminal sentences, and the shameful overloading of

---

[4] Because petitioner has not demonstrated that issuance of the writ is "necessary" or "appropriate" under § 1651, I need not discuss whether it fails the further requirement that it be "in aid of" our jurisdiction.

our federal criminal justice system, produced by various aspects of this Court's habeas corpus jurisprudence. And the purpose of the specific provision of AEDPA at issue here is also not obscure: It was designed, in intelligent reliance upon a holding of this Court, to end § 2255 litigation in the district court unless a court of appeals judge or the circuit justice finds reasonable basis to appeal. By giving literally unprecedented meaning to the words in two relevant statutes, and overruling the premise of Congress's enactment, the Court adds new, Byzantine detail to a habeas corpus scheme Congress meant to streamline and simplify. I respectfully dissent.