RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

LUCILLE S. TAYLOR, an individual,

          *Plaintiff-Appellant*,

    *v.*

ROBERT J. BUCHANAN, in his official capacity as President of the State Bar of Michigan Board of Commissioners; DANA M. WARNEZ, in her official capacity as President-Elect of the State Bar of Michigan Board of Commissioners; JAMES W. HEATH, in his official capacity as Vice President of the State Bar of Michigan Board of Commissioners; DANIEL DIETRICH QUICK, in his official capacity as Secretary of the State Bar of Michigan Board of Commissioners; JOSEPH P. MCGILL, in his official capacity as Treasurer of the State Bar of Michigan Board of Commissioners,

          *Defendants-Appellees*.

> No. 20-2002

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cv-00670—Robert J. Jonker, District Judge.

Decided and Filed:  July 15, 2021

Before:  SILER, MOORE, and THAPAR, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Derk A. Wilcox, MACKINAC CENTER LEGAL FOUNDATION, Midland, Michigan, for Appellant.  Andrea J. Bernard, Charles R. Quigg, WARNER NORCROSS + JUDD LLP, Grand Rapids, Michigan, John J. Bursch, BURSCH LAW PLLC, Caledonia,

Michigan, for Appellees. Kerry Lee Morgan, PENTIUK, COUVREUR & KOBILJAK, P.C., Wyandotte, Michigan, for Amicus Curiae.

MOORE, J., delivered the opinion of the court in which SILER and THAPAR, JJ., joined. THAPAR, J. (pp. 6–7), delivered a separate concurring opinion.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge. Attorneys in Michigan, like those in most other states, must join an integrated bar association in order to practice law. In this suit, Lucille S. Taylor, a Michigan attorney, argues that requiring her to join the State Bar of Michigan violates her freedom of association, and further that the State Bar of Michigan's use of a portion of her mandatory membership dues for certain advocacy activities violates her freedom of speech. The district court rejected Taylor's First Amendment claims, holding that they are foreclosed by two Supreme Court decisions that have not since been overruled. We **AFFIRM**.

The first of the two cases relied upon by the district court is *Lathrop v. Donohue*, 367 U.S. 820 (1961). There, the Court held that compulsory membership in the Wisconsin Bar as a condition of practicing law (along with its compulsory membership fees) did not violate freedom-of-association principles. *Id.* at 843 (plurality op.); *id.* at 849 (Harlan, J., concurring in the judgment). The second case is *Keller v. State Bar of California*, where the Court considered a First Amendment challenge to the State Bar of California's use of "membership dues to finance certain ideological or political activities" with which the plaintiffs disagreed. 496 U.S. 1, 4 (1990). Reaffirming that a state may require attorneys to join an integrated bar association in order to practice law, the unanimous Court held that the bar association could use membership dues to fund activities "germane" to the regulation of the legal profession and the improvement of legal services without violating freedom-of-speech principles. *Id.* at 13–14. To do so, the Court relied heavily upon its earlier reasoning in *Abood v. Detroit Board of Education*, where the Court upheld a state law allowing local government employers and unions to enter into "agency shop" agreements, "whereby every employee represented by a union even though not a union member must pay to the union, as a condition of employment, a service fee equal in amount to

union dues," 431 U.S. 209, 211 (1977), with the funds used to finance union activities related to the union's collective-bargaining purpose. *See Keller*, 496 U.S. at 9–11, 13–14, 16–17.

To Taylor's credit, she acknowledges that *Lathrop* and *Keller* are an insurmountable hurdle if they remain good law. Taylor concedes that her compulsory membership in the State Bar of Michigan does not offend the First Amendment under either case. *See, e.g.*, Appellant Br. at 3 ("*Lathrop* . . . found that such integrated bar membership requirements did not violate free association rights."). And while the State Bar of Michigan does engage in advocacy germane to the legal profession, Taylor concedes that its activities do not cross the line set in *Keller*. *Id.* at 7 ("Lucille Taylor does not challenge that, at all times relevant to this lawsuit, the Bar has constrained itself to public advocacy that was previously held allowable under *Keller*." (internal citation omitted)); *see also* R. 16 (Joint Statement of Material Facts at 9) (Page ID #92) ("Plaintiff is not alleging that the State Bar of Michigan has exceeded *Keller*'s parameters."). Instead, Taylor argues that *Lathrop* and *Keller* no longer bind this court because of intervening precedent in the form of *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), where the Court overruled *Abood* and held that First Amendment challenges to similar union laws are to be analyzed under at least the heightened "exacting scrutiny" standard that the Court had favored over *Abood* in *Harris v. Quinn*, 573 U.S. 616, 647–48 (2014). *See Janus*, 138 S. Ct. at 2460, 2465. According to Taylor, because *Janus* overruled *Abood*, and *Abood* was the foundation upon which the Court built *Keller*, we need not follow *Keller* (and, by association, *Lathrop*) here and are free to consider anew her constitutional claims. We disagree.

Our cases are clear that we may not disregard Supreme Court precedent unless and until it has been overruled by the Court itself. *Thompson v. Marietta Educ. Ass'n*, 972 F.3d 809, 813 (6th Cir. 2020), *cert. denied*, No. 20-1019, 2021 WL 2301972 (U.S. 2021). Even where intervening Supreme Court decisions have undermined the reasoning of an earlier decision, we must continue to follow the earlier case if it "directly controls" until the Court has overruled it. *Id.* at 812, 814; *Grutter v. Bollinger*, 288 F.3d 732, 743–44 (6th Cir. 2002) (en banc) ("If a precedent of [the] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly

controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." (alterations original but first alteration omitted) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)), *aff'd*, 539 U.S. 306 (2003). In other words, it is for the Supreme Court to tell the courts of appeals when the Court has overruled one of its decisions, not for the courts of appeals to tell the Court when it has done so implicitly. *See Hohn v. United States*, 524 U.S. 236, 252–53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.").

Here, the district court correctly concluded that *Lathrop* and *Keller* continue to bind the lower courts despite the Court's ruling in *Janus*. To begin, the majority opinion in *Janus* made no mention of *Keller* (or *Lathrop*) in overruling *Abood*. Indeed, in *Harris*, the *Janus* precursor mentioned above, the Court expressly rejected the notion that its ruling impacted the continued validity of *Keller*, which "fit[] comfortably within the framework applied in [*Harris*]." *Harris*, 573 U.S. at 655–56. Even the two justices who have signaled their willingness to reconsider *Keller* in light of *Janus* have acknowledged that *Keller* remains binding upon the lower courts until the Supreme Court says otherwise. *Jarchow v. State Bar of Wis.*, 140 S. Ct. 1720, 1721 (2020) ("[A]ny challenge to our precedents will be dismissed for failure to state a claim, before discovery can take place. . . . Short of a constitutional amendment, only we can rectify our own erroneous constitutional decisions.") (Thomas, J., joined by Gorsuch, J., dissenting from the denial of cert.). Consistent with the numerous courts faced with claims like Taylor's in the wake of *Janus*, we hold that *Lathrop* and *Keller* remain good law. *See, e.g.*, *Jarchow v. State Bar of Wis.*, No. 19-3444, 2019 WL 8953257, at *1 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 1720 (2020); *Fleck v. Wetch*, 937 F.3d 1112, 1115 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 1294 (2020), *reh'g denied*, 140 S. Ct. 2756 (2020); *Crowe v. Or. State Bar*, 989 F.3d 714, 725 (9th Cir. 2021) ("But *Keller* plainly has not been overruled."), *petition for cert. filed* (May 27, 2021); *Schell v. Chief Just. & Justs. of Okla. Sup. Ct.*, --- F.4th ----, 2021 WL 2657106, at *8 (10th Cir. June 29, 2021); *McDonald v. Longley*, --- F.4th ----, 2021 WL 2767443, at *6 n.14 (5th Cir. July 2, 2021); *see also Thompson*, 972 F.3d at 813–14 (upholding a district court decision based upon

*Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), despite recognizing that "*Knight*'s reasoning conflicts with the reasoning in *Janus*").[1]

Because, as Taylor concedes, *Lathrop* and *Keller* doom her First Amendment claims, we **AFFIRM** the judgment of the district court.

---

[1]In *Schell* and *McDonald*, the Tenth and Fifth Circuits respectively allowed First Amendment claims regarding the Oklahoma Bar Association and State Bar of Texas to proceed but only to the extent that the plaintiffs in those cases alleged that those integrated bar associations engaged in activities that were not "germane" to the practice of law. *See Schell*, 2021 WL 2657106, at *1; *McDonald*, 2021 WL 2767443, at *9–14; *see also Boudreaux v. La. State Bar Ass'n*, --- F.4th ----, 2021 WL 2767318, at *4–5 (5th Cir. July 2, 2021); *Crowe*, 989 F.3d at 729 (holding that *Lathrop* does not preclude a free-association claim challenging compelled membership in a bar association that "engages in nongermane political activities"). We do not deal with the same circumstances here given Taylor's concession that the State Bar of Michigan's activities are consistent with *Lathrop* and *Keller*.

———————————

**CONCURRENCE**

———————————

THAPAR, Circuit Judge, concurring. Because Supreme Court precedent forecloses the plaintiff's compelled association claim, and because the plaintiff failed to bring the one claim that remains viable, I concur.

Michigan has an integrated bar. That means that the plaintiff must provide financial support to the Michigan Bar Association, which engages in lobbying and other such work. As the majority notes, the plaintiff's claim that forcing her to be part of an integrated bar violates her associational rights cannot succeed. The reason lies not in the First Amendment, but in Supreme Court precedent.

First, the Supreme Court held that mandatory bar membership, like union-shop agreements, was compelled association allowed by the First Amendment. *Lathrop v. Donohue*, 367 U.S. 820, 842–43 (1961). Then, the Court held that public employees could be required to pay union dues. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 235–36 (1977). And in *Keller v. State Bar of California*, the Court again upheld mandatory bar membership and again analogized "the relationship of the State Bar and its members" to "the relationship of employee unions and their members." 496 U.S. 1, 12 (1990). So relying on its precedent in *Abood*, the *Keller* Court reasoned that just as a state could require public employees to pay union dues, so too could a state require lawyers to pay state bar dues. *Id.* at 13–14. As far as the Court was concerned, state bars and public-sector unions seemed to go hand-in-hand.

But then in *Janus*, the Supreme Court overruled *Abood*, and said that "[c]ompelling individuals to mouth support for views they find objectionable" violates the First Amendment. *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018). And the Court repeated Thomas Jefferson's warning that compelling an individual "to furnish contributions of money for the propagation of opinions which he disbelieves and abhors is sinful and tyrannical." *Id.* at 2464 (cleaned up). So after *Janus*¸ one might believe that this is an easy case. But it is not. Why? Because *Janus* did not overrule *Keller*'s bar mandate. *See Jarchow v.*

*State Bar of Wis.*, 140 S. Ct. 1720, 1720 (2020) (Thomas, J., dissenting from denial of certiorari) (noting that *Janus* "casts significant doubt" on *Keller*). *But see Harris v. Quinn*, 573 U.S. 616, 655–56 (2014) (refusing to extend *Abood* but maintaining *Keller*'s vitality). And only the Supreme Court can overrule its previous decisions. Until it does, we must follow *Keller*.

But even after *Keller*, some claims can still be brought against integrated bars. If an integrated bar association engages in political or ideological activity that does not relate to regulating the legal profession, a plaintiff can bring a freedom of speech and/or association claim. The speech claim would prevail if an integrated bar association used mandatory membership fees to fund non-germane political or ideological activity without providing adequate opt-out procedures. *See Chicago Tchrs. Union v. Hudson*, 475 U.S. 292, 306–07 (1986) (identifying opt-out procedures). The association claim could go forward even if the bar association allowed lawyers to opt out of funding ideological activity. *See Keller*, 496 U.S. at 17; *see also McDonald v. Longley*, No. 20-50448, 2021 WL 2767443 at *9 (5th Cir. July 2, 2021). The plaintiff here, however, concedes that the Michigan State Bar's ideological activities "do not cross the [germaneness] line set in *Keller*." Maj. Op. at 3. So neither claim remains.

Because the plaintiff did not bring a viable challenge, I concur.