Justice STEVENS,
with whom Justice GINSBURG joins, dissenting.
Statutes of limitations generally fall into two broad categories: affirmative defenses that can be waived and so-called “jurisdictional” statutes that are not subject to waiver or equitable tolling. For much of our history, statutes of limitations in suits against the Government were customarily placed in the latter category on the theory that conditions attached to a waiver of sovereign immunity “must be strictly observed and exceptions thereto are not to be implied.” Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); see also Finn v. United States, 123 U.S. 227, 232-233, 8 S.Ct. 82, 31 L.Ed. 128 (1887); Kendall v. United States, 107 U.S. 123, 125-126, 2 S.Ct. 277, 27 L.Ed. 437 (1883). But that rule was ignored—and thus presumably abandoned—in Honda v. Clark, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967),[1] and Bowen v. City of New York, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986).[2]
In Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), we followed the lead of Bowen (and, by extension, Honda), and explicitly replaced the Soriano rule with a rebuttable presumption that equitable tolling rules “applicable to suits against private defendants should also apply to suits against the United States.”[3] We acknowl *758 edged that “our previous cases dealing with the effect of time limits in suits against the Government [had] not been entirely consistent,” 498 U.S., at 94, 111 S.Ct. 453, and we determined that “a continuing effort on our part to decide each case on an ad hoc basis ... would have the disadvantage of continuing unpredictability without the corresponding advantage of greater fidelity to the intent of Congress,” id, at 95, 111 S.Ct. 453. We therefore crafted a background rule that reflected “a realistic assessment of legislative intent,” and also provided “a practically useful principle of interpretation.” Ibid.
Our decision in Irwin did more than merely “mentio[n]” Soriano, ante, at 756; rather, we expressly declined to follow that case. We noted that the limitations language at issue in Irwin closely resembled the text we had confronted in Soriano; although we conceded that “[a]n argument [could] undoubtedly be made” that the statutes were distinguishable, we were “not persuaded that the difference between them [was] enough to manifest a different congressional intent with respect to the availability of equitable tolling,” 498 U.S., at 95, 111 S.Ct. 453. Having found the two statutes functionally indistinguishable, we nevertheless declined the Government’s invitation to follow Soriano, and we did not so much as cite Kendall or Finn. Instead, we adopted “a more general rule to govern the applicability of equitable tolling in suits against the Government,” 498 U.S., at 95, 111 S.Ct. 453, and we applied the new presumption in favor of equitable tolling to the case before us.[4] Nothing in the framing of our decision to adopt a “general rule” to govern the availability of equitable tolling in suits against the Government, ibid, suggested a carve-out for statutes we had already held ineligible for equitable tolling, pursuant to the approach that we had previously abandoned in Honda and Bowen, and definitively rejected in Irwin.
Indeed, in his separate opinion in Irwin, Justice White noted that the decision was not only inconsistent with our prior cases but also that it “directly overrule[d]” Sori-ano. 498 U.S., at 98, 111 S.Ct. 453 (opinion concurring in part and concurring in judgment). Neither the Court’s opinion nor my separate opinion disagreed with that characterization of our holding. The attempt of the Court today, therefore, to cast petitioner’s argument as an entreaty to overrule Soriano, as well as Kendall and Finn—and its response that “[b]asic principles of stare decisis ... require us to reject this argument,” ante, at 756—has a hollow ring. If the doctrine of stare decisis supplied a clear answer to the question posed by this case—or if the Gov *759 ernment could plausibly argue that it had relied on Soriano after our decision in Irwin—I would join the Court’s judgment, despite its unwisdom.[5] But I do not agree with the majority’s reading of our cases. It seems to me quite plain that Soriano is no longer good law, and if there is in fact ambiguity in our cases, it ought to be resolved in favor of clarifying the law, rather than preserving an anachronism whose doctrinal underpinnings were discarded years ago.[6]
With respect to provisions as common as time limitations, Congress, in enacting statutes, and judges, in applying them, ought to be able to rely upon a background rule of considerable clarity. Irwin announced such a rule, and I would apply that rule to the case before us.[7] Because today’s decision threatens to revive the confusion of our pre-Irwin jurisprudence, I respectfully dissent.
Justice GINSBURG, dissenting.
I agree that adhering to Kendall, Finn, and Soriano is irreconcilable with the reasoning and result in Irwin, and therefore join Justice STEVENS’ dissent. I write separately to explain why I would regard this case as an appropriate occasion to revisit those precedents even if we had not already “directly overrule[d]” them. Cf. Irwin v. Department of Veterans Affairs, 498 U.S. 89, 98, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (White, J., concurring in part and concurring in judgment).
Stare decisis is an important, but not an inflexible, doctrine in our law. See Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, *760 405, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandéis, J., dissenting) (“Stare decisis is not ... a universal, inexorable command.”). The policies underlying the doctrine—stability and predictability—are at their strongest when the Court is asked to change its mind, though nothing else of significance has changed. See Powell, Stare Decisis and Judicial Restraint, 47 Wash. & Lee L.Rev. 281, 286-287 (1990). As to the matter before us, our perception of the office of a time limit on suits against the Government has changed significantly since the decisions relied upon by the Court. We have recognized that “the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States,” Irwin, 498 U.S., at 95-96, 111 S.Ct. 453, and that “limitations principles should generally apply to the Government in the same way that they apply to private parties,” Fran-conia Associates v. United States, 536 U.S. 129, 145, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002) (internal quotation marks omitted). See also Scarborough v. Principi, 541 U.S. 401, 420-422, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004). It damages the coherence of the law if we cling to outworn precedent at odds with later, more enlightened decisions.
I surely do not suggest that overruling is routinely in order whenever a majority disagrees with a past decision, and I acknowledge that “[cjonsiderations of stare decisis have special force in the area of statutory interpretation,” Patterson v. McLean Credit Union, 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). But concerns we have previously found sufficiently weighty to justify revisiting a statutory precedent counsel strongly in favor of doing so here. First, overruling Kendall v. United States, 107 U.S. 123, 2 S.Ct. 277, 27 L.Ed. 437 (1883), Finn v. United States, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128 (1887), and Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957), would, as the Court concedes, see ante, at 756, “achieve a uniform interpretation of similar statutory language,” Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Second, we have recognized the propriety of revisiting a decision when “intervening development of the law” has “removed or weakened [its] conceptual underpinnings.” Patterson, 491 U.S., at 173, 109 S.Ct. 2363. Irwin and Franconia—not to mention our recent efforts to apply the term “jurisdictional” with greater precision, see, e.g., Arbaugh v. Y & H Corp., 546 U.S. 500, 515-516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)—have left no tenable basis for Kendall and its progeny.
Third, it is altogether appropriate to overrule a precedent that has become “a positive detriment to coherence and consistency in the law.” Patterson, 491 U.S., at 173, 109 S.Ct. 2363. The inconsistency between the Kendall line and Irwin is a source of both theoretical incoherence and practical confusion. For example, 28 U.S.C. § 2401(a) contains a time limit materially identical to the one in § 2501. Courts of Appeals have divided on the question whether § 2401(a)’s limit is “jurisdictional.” Compare Center for Biological Diversity v. Hamilton, 453 F.3d 1331, 1334 (C.A.11 2006) (per curiam), with Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765, 770 (C.A.9 1997). See also Harris v. Federal Aviation Admin., 353 F.3d 1006, 1013, n. 7 (C.A.D.C.2004) (recognizing that Irwin may have undermined Circuit precedent holding that § 2401(a) is “jurisdictional”). Today’s decision hardly assists lower courts endeavoring to answer this question. While holding that the language in § 2501 is “jurisdictional,” the Court also implies that Irwin governs the *761 interpretation of all statutes we have not yet construed—including, presumably, the identically worded § 2401. See ante, at 756.
Moreover, as the Court implicitly concedes, see ante, at 756 - 757, the strongest reason to adhere to precedent provides no support for the KendalV-Finn-Soriano line. “Stare decisis has added force when the legislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response.” Hilton v. South Carolina Public Railways Comm’n, 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991). The Government, however, makes no claim that either private citizens or Congress have relied upon the “jurisdictional” status of § 2501. There are thus strong reasons to abandon—and notably slim reasons to adhere to—the anachronistic interpretation of § 2501 adopted in Kendall.
Several times, in recent Terms, the Court has discarded statutory decisions rendered infirm by what a majority considered to be better informed opinion. See, e.g., Leegin Creative Leather Products, Inc. v. PSKS, Inc., 551 U.S. -, -, 127 S.Ct. 2705, 2725, 168 L.Ed.2d 623 (2007) (overruling Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911)); Bowles v. Russell, 551 U.S. -, -, 127 S.Ct. 2360, 2366-67, 168 L.Ed.2d 96 (2007) (overruling Thompson v. INS, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam), and Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962) (per curiam)); Illinois Tool Works Inc. v. Independent Ink, Inc., 547 U.S. 28, 42-43, 126 S.Ct. 1281, 164 L.Ed.2d 26 (2006) (overruling, inter alia, Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942)); Hohn v. United States, 524 U.S. 236, 253, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998) (overruling House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739 (1945) (per curiam)). In light of these overrulings, the Court’s decision to adhere to Kendall, Finn, and Soriano— while offering nothing to justify their reasoning or results—is, to say the least, perplexing. After today’s decision, one will need a crystal ball to predict when this Court will reject, and when it will cling to, its prior decisions interpreting legislative texts.
I would reverse the judgment rendered by the Federal Circuit majority. In accord with dissenting Judge Newman, I would hold that the Court of Appeals had no warrant to declare the petitioner’s action time barred.

. In Honda, we concluded, as to petitioners’ attempts to recover assets that had been seized upon the outbreak of hostilities with Japan, that it was "consistent with the overall congressional purpose to apply a traditional equitable tolling principle, aptly suited to the particular facts of this case and nowhere eschewed by Congress.” 386 U.S., at 501, 87 S.Ct. 1188.

. In Bowen, we permitted equitable tolling of the 60-day requirement for challenging the denial of disability benefits under the Social Security Act. We cautioned that "we must be careful not to assume the authority to narrow the waiver that Congress intended, or construe the waiver unduly restrictively.” 476 U.S., at 479, 106 S.Ct. 2022 (citation and internal quotation marks omitted).

. During the Irwin oral arguments, several Members of the Court remarked on the need to choose between the Soriano line of cases and the approach taken in cases like Bowen. See Tr. of Oral Arg., O.T.1990, No. 89-5867, pp. 25-26 ("Question: '[W]hat do you make of our cases which seem to go really in different directions. The Bowen case, which was unanimous and contains language in it that says statutory time limits are traditionally *758 subject to equitable tolling, and other cases like maybe Soriano ... which point in the other direction[?]' ”); see also id., at 8 (“Question: . I think we sort of have to choose between Soriano and Bowen, don’t you think?’ ”).

. In the years since we decided Irwin, we have applied its rule in a number of statutory contexts. See, e.g., Scarborough v. Principi, 541 U.S. 401, 420-423, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (applying the rule of Irwin and finding that an application for fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), should be permitted to be amended out of time). Most significantly, in Franconia Associates v. United States, 536 U.S. 129, 145, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002), we affirmed, in the context of 28 U.S.C. § 2501, the rule that “limitations principles should generally apply to the Government 'in the same way that’ they apply to private parties” (citing Irwin, 498 U.S., at 95, 111 S.Ct. 453). Although the Government is correct that the question presented by Franco-nia was when a claim accrued under § 2501, our reliance on Irwin undermines the majority's suggestion that Irwin has no bearing on statutes that have previously been the subject of judicial construction.

. The majority points out quite rightly, ante, at 756, that the doctrine of stare decisis has " ‘special force' ” in statutory cases. See Patterson v. McLean Credit Union, 491 U.S. 164, 172-173, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). But the doctrine should not prevent us from acknowledging when we have already overruled a prior case, even if we failed to say so explicitly at the time. In Rasul v. Bush, 542 U.S. 466, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004), for example, we explained that in Braden v. 30th Judicial Circuit Court of Ky., 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), we had overruled so much of Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), as found that the habeas petitioners’ presence within the territorial reach of the district court was a jurisdictional prerequisite. Braden held, contrary to Ahrens, that a prisoner’s presence within the district court’s territorial reach was not an “inflexible jurisdictional rule,” 410 U.S., at 500, 93 S.Ct. 1123. Braden nowhere stated that it was overruling Ahrens, although Justice Rehnquist began his dissent by noting: "Today the Court overrules Ahrens v. Clark.” 410 U.S., at 502, 93 S.Ct. 1123. Thirty years later we acknowledged in Rasul what was by then clear: Ahrens was no longer good law. 542 U.S., at 478-479, and n. 9, 124 S.Ct. 2686.
Moreover, the logic of the "special force” of stare decisis in the statutory context is that “Congress remains free to alter what we have done,” Patterson, 491 U.S., at 172-173, 109 S.Ct. 2363. But the amendment of an obscure statutory provision is not a high priority for a busy Congress, and we should remain mindful that enactment of legislation is by no means a cost-free enterprise.

. See Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 469 (1897) ("It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past”).

. The majority does gesture toward an application of Irwin, contending that even if Irwin’s rule is apposite, the presumption of congressional intent to allow equitable tolling is rebutted by this Court’s "definitive earlier interpretation” of § 2501, ante, at 756. But the majority’s application of the Irwin rule is implausible, since Irwin itself compared the language of § 2501 with the limitations language of Title VII of the Civil Rights Act of 1964, and found that the comparison did not reveal "a different congressional intent with respect to the availability of equitable tolling,” 498 U.S., at 95, 111 S.Ct. 453.