United States Court of Appeals
Fifth Circuit

**F I L E D**

May 20, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-20925

FRANCES ELAINE NEWTON,

Petitioner - Appellant,

VERSUS

DOUG DRETKE, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent - Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, DAVIS and PRADO, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Petitioner Frances Elaine Newton was convicted of capital murder in Texas and sentenced to death. She now seeks a certificate of appealability from the district court's denial of habeas corpus relief. Because Newton has failed to make a substantial showing of a denial of a constitutional right, we deny her application for COA.

I.

Newton was convicted and sentenced to death in October 1988 for the capital offense of murdering her young daughter in the same criminal transaction as the murders of her husband and young son. On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and sentence. Newton v. State, No. 70,770, 1992 WL 175742 (Tex. Crim. App. June 17,

1

1992)(unpublished opinion).  The Supreme Court denied Newton's petition for writ of certiorari, Newton v. Texas, 509 U.S. 926 (1993), and denied rehearing, Newton v. Texas, 509 U.S. 945 (1993).  Newton filed a state application for writ of habeas corpus.  The trial court entered findings of fact and conclusions of law recommending denial of relief.  The Court of Criminal Appeals adopted the trial court's findings and denied relief.  Ex Parte Newton, Application No. 47,025-01 (Tex. Crim. App.  Dec.6, 2000).

Newton filed her federal habeas petition in December 2001, raising five claims for relief.  In August 2003, the district court granted the Director's motion for summary judgment, denying habeas relief and denying a COA.  Newton timely appealed.  Newton now seeks a COA from this court.

## II.

The Court of Criminal Appeals summarized the relevant facts of the crime in its opinion on direct appeal:

> On the evening of April 7, 1987 at 8:27 p.m., Deputy R.W. Ricks was dispatched to an apartment complex at 6126 West Mount Houston in response to a possible shooting. Appellant was at the location, along with her cousin, Sondra Nelms. Lying on a couch in appellant's apartment, Ricks found the body of Adrian Newton, appellant's husband, with a bullet wound to the head, and the bodies of Alton Newton, seven years old, and Farrah Newton, twenty-one months old, appellant's children, both of whom had died from gunshot wounds to the chest. There were no signs of forced entry into the apartment, nor any signs of a struggle.
>
> Earlier the same evening, between 7:00 and 7:30 p.m., appellant arrived in an automobile at Sondra Nelms' residence at 6524 Sealy. Appellant asked Sondra to come over to appellant's apartment to visit. Before leaving Sondra's house, appellant took a blue bag out of her car and put it in an abandoned house which belonged to her parents, located next door at 6520 Sealy. Upon arrival at appellant's apartment, they found appellant's husband and two children dead.
>
> Later that evening, homicide detective Michael Talton spoke with Nelms, who took him to the house at 6520 Sealy. Inside he found a blue bag containing a blue steel Raven Arms .25 automatic, which he turned over to a crime scene officer.

2

The gun's owner, Michael Mouton, had loaned the gun to his cousin, Jeffrey Frelow, five or six months prior to the murders. Jeffrey Frelow had known appellant since junior high school, and began to have a sexual relationship with her approximately one to two months prior to the murders. Frelow identified the gun and indicated that he kept it in a chest of drawers in his master bedroom. Because she often did Frelow's laundry, appellant had access to the drawers and to the gun.

On April 8, 1987, appellant accompanied Detective Michael Parinello during a search of her apartment, where she pointed out the clothing she wore the day of the murders. Parinello collected the clothing and delivered it to the Department of Public Safety Crime Laboratory to test for possible gunpowder residue.

Sterling Duane Newton, the brother of the deceased Adrian Newton, was also living at the apartment where the murders occurred, and was present on the evening of April 7, 1987. When Sterling arrived at the apartment at 5:30 or 6:00, appellant was there. Appellant requested that Sterling leave the apartment to give her some time alone with Adrian to talk over their marital problems. Sterling remained at the apartment for approximately an hour to an hour and a half before leaving.

Ramona Bell, a long time acquaintance of the deceased, Adrian Newton, had been dating him for some time prior to April 7, 1987. Bell knew that appellant and Adrian were on bad terms. Bell testified that on April 7, 1987, she called Adrian from work at approximately 6:45 p.m., and appellant answered the telephone. Bell then spoke to Adrian for about fifteen minutes. During the telephone conversation Adrian told Bell that he was tired and was going to go to sleep, but not until appellant left, because he did not trust appellant.

Alphonse Harrison, a friend of Adrian Newton, had seen him earlier in the day on April 7, 1987, and the two made plans to get together that night. Harrison testified that he called Adrian between 7:00 and 7:15 that evening, and appellant answered the telephone. Harrison never got to talk to Adrian because appellant put him on hold and left him holding for possibly 45 minutes. Harrison hung up but continued to call back and finally got an answer around 9:00 p.m., when appellant's cousin answered the telephone and told him that Adrian had been shot.

Claudia Chapman was working for a State Farm Insurance agent when she met appellant in September 1986. Appellant came in for automobile insurance, and Chapman talked to her about purchasing life insurance. On March 18, 1987, appellant purchased a fifty thousand dollar life insurance policy on herself, another on her husband, Adrian, and a third on her daughter, Farrah. According to the insurance applications, appellant was the primary beneficiary on the latter two policies, which became effective immediately. Both appellant and her mother had made claims on the policies as of the time of the trial of this cause.

A ballistics expert established that the pistol recovered by Officer Talton was the murder weapon. A forensics expert for the State established that nitrites were present on appellant's skirt. In the expert's opinion, the nitrites came from gunpowder residue, and were consistent with someone shooting a pistol in the lower front area of the skirt. He testified that another possible source of nitrites would be fertilizer. A forensic expert for appellant confirmed that nitrites could come from fertilizer.

Additional facts necessary to the issues will be presented in the sections that follow.

III.

Newton filed the instant Section 2254 application for habeas relief after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). Her application is therefore subject to the AEDPA. Lindh v. Murphy, 521 U.S. 320, 336(1997). Under the AEDPA, a petitioner must obtain a COA before appealing the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(2). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. . . .'" Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003) (citing 28 U.S.C. §2253(c)(1)) . "The COA statute requires a threshold inquiry into whether the circuit court may entertain an appeal." Id. (citing Slack v. McDaniel, 529 U.S. 473, 482 (2000); Hohn v. United States, 524 U.S. 236, 248 (1998)). A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983) (citation and internal quotation marks omitted). Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination. Fuller v. Johnson,

114 F.3d 491, 495 (5th Cir. 1997).

The analysis "requires an overview of the claims in the habeas petition and a general assessment of their merit." Miller-El, 123 S.Ct. at 1039. The court must look to the district court's application of AEDPA to the petitioner's constitutional claims and determine whether the court's resolution was debatable among reasonable jurists. Id. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Id. Rather, "'[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Id. at 1040. (citing Slack v. McDaniel 529 U.S. 473, 484).

## IV.

Newton raises two issues in this Application for Certificate of Appealability (COA): (1) the trial court denied petitioner her 6th Amendment right to be represented by counsel of her choice when it denied her motion for continuance so Newton could substitute retained counsel; and (2) the Texas special issues did not permit the jury to consider and give effect to Newton's mitigating evidence of youth, good character, cooperation with police, unfaithful /drug dealing spouse, and impoverished background.

## A.

Newton claims first that she was denied her Sixth Amendment right to be represented by the attorneys of her choice because, although the trial court granted her motion to substitute counsel, it denied her request for a continuance to allow the newly substituted counsel time to prepare for trial.

In November 1987, Newton complained to the trial court by letter regarding her dissatisfaction with her appointed counsel prior to trial. The letter requested that the court order an

5

investigation of her case. One month later, Newton filed a Motion to Dismiss Court Appointed Counsel and Appoint New Counsel. In the motion, Newton again complained that appointed counsel, Ronald Mock, had no contact with her and had taken no action to research Newton's case. The trial court denied the motion. In January 1988, the court appointed Catherine Coulter to serve as Mock's co-counsel. Newton did not re-urge her motion. In a letter file-stamped August 1988, Newton's mother also complained about Mock's performance.

Four days before trial and after the twenty-fourth day of voir dire had been completed, Newton retained counsel. She contended that before this date her family had been unable to raise sufficient funds to hire counsel. She requested a continuance to allow retained counsel time to prepare. The motion did not specify how much time her retained attorneys were requesting for trial preparation. After a hearing, the court granted the motion to substitute counsel but denied the motion for a continuance. When the court did not grant the continuance, the retained attorneys withdrew and Mock and Coulter represented Newton at trial.

The Sixth Amendment right to counsel in a criminal proceeding has "long been construed to include a criminal defendant's qualified right to retain counsel of the defendant's own choosing." United States v. Hughey, 147 F.3d 423, 429 (5th Cir. 1998)(citations omitted). The right is not absolute. Id. Rather, what is required is that the defendant be given a fair or reasonable opportunity to obtain particular counsel. United States v. Paternostro, 966 F.2d 907, 912 (5th Cir. 1992). When a defendant has been given a reasonable opportunity to obtain counsel of his choice, the court retains broad discretion in evaluating a request for a continuance. Ungar v. Sarafite, 376 U.S. 575, 590-91 (1964). Accordingly, the issue Newton raises is not simply whether the district court abused its discretion in denying her motion for a continuance. The issue is the effect the denial of the

6

continuance had on her right to counsel. When a denial of a continuance is the basis for a habeas petition, the petitioner must show an abuse of discretion that was so arbitrary and fundamentally unfair as to violate the constitutional principles of due process. Skillern v. Estelle, 720 F.2d 839, 850 (5th Cir. 1983). Accordingly, to prevail, a petition must show that the failure to grant a continuance harmed the defense. United States v. Pollani, 146 F.3d 269, 272 (5th Cir. 1998).

In this circuit, several factors are examined when reviewing a state court's denial of a motion for continuance that a defendant claims interfered with her fair and reasonable opportunity to obtain particular counsel:

> (1) the length of the requested delay; (2) whether the lead counsel has an associate who is adequately prepared to try the case; (3) whether other continuances have been requested and granted; (4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the court; (5) whether the requested delay is for a legitimate reason, or whether it is dilatory and contrived; (6) whether there are other unique factors present.

Gandy v. Alabama, 569 F.2d 1318, 1324 (5th Cir. 1978). Both the state habeas court and the district court evaluated these factors as applied to Newton's claim and found no denial of due process. We agree with the analysis of both courts..

Petitioner's Motion for Continuance did not specify the length of the delay she requested; the court had already spent twenty-four days in death penalty voir dire and the trial was set to begin three days later; the substitute counsel was unprepared to try the case; eighteen months had passed since Newton was indicted, and ten months had passed since Newton had complained about her appointed counsel. In addition, Newton cannot show that failure to grant the continuance harmed the defense. Although Newton raised claims of ineffective assistance of counsel in the district court which were found to be without merit, she does not seek COA on that ground. Newton raises no claim of

7

prejudice in her application to this court.

The facts of this case would probably not support a claim of abuse of discretion in denying the motion for continuance if this were a direct appeal. See United States v. Silva, 611 F.2d 78, 79 (5th Cir.1980)(no abuse denying continuance day before trial to substitute retained counsel for appointed counsel - length of delay not specified); United States v. Dilworth, 524 F.2d 470, 472 (5th Cir. 1975) (No abuse denying motion for continuance day before scheduled trial, when after 13 months, defendant declared that he was not satisfied with his attorney, who he had discharged, and new counsel was engaged on another matter for several weeks); United States v. Casey, 480 F.2d 151, 152 (5th Cir. 1973)(no abuse denying continuance when counsel withdrew 20 days before trial and defendant failed to hire substitute attorney); United States v. Hollis, 450 F.2d 1207, 1208 (5th Cir. 1971)(no abuse denying continuance when attorney sought to withdraw 5 days before trial and defendant sought delay to retain private counsel.)

More particularly, when Newton raised this claim on direct appeal and on state habeas, the Texas court's denial of relief was neither contrary to, nor an unreasonable application of, federal law. Accordingly, the district court was precluded from granting federal habeas relief. Because the district court's assessment was not debatable, this claim does not warrant a COA.

B.

Newton also argues that the Texas special issues on deliberateness and future dangerousness gave the jury no vehicle for expressing a reasoned response to her mitigating evidence that she was "(a) young; (b) impregnated as a teenager; (c) offended by the philandering of her husband; (d) married to a drug addict; (e) cooperative with the police investigation; (f) churchgoing; and (g) the daughter of a supermarket meat wrapper who had eleven children." She also argues that the jury was

given a nullification instruction, like that given in Penry v. Johnson, 532 U.S. 782, 798-801 (2001)("Penry II"), that is error per se.

The district court denied relief because Newton did not submit mitigating evidence of the same character or magnitude as that presented in Penry I, Penry v. Lynaugh, 492 U.S. 302 (1989)("Penry I"), and because the evidence she did submit could be considered under the existing special issues. The court did not discuss the claimed Penry II (nullification) violation.

Newton's Penry I claim is without merit. In this circuit, in order to establish a Penry I violation, a petitioner must demonstrate that the proffered evidence is (1) constitutionally relevant mitigating evidence that was (2) beyond the effective reach of the jurors. Madden v. Collins, 18 F.3d 304, 308 (5th Cir. 1994). Although the district court discussed the first part of the test concluding that the proffered evidence was not constitutionally relevant, we need not address that issue. This case can clearly be disposed of on the second prong, because the evidence Newton presented was clearly within the scope of the existing special issues. See Graham v. Collins, 506 U.S. 461, 475-76 (1993)(holding that Texas special issues permitted jurors to consider mitigating evidence of youth, family background and positive character under second issue of future dangerousness); Beazley v. Johnson, 242 F.3d 248, 260 (5th Cir. 2001)(Good character evidence can be given effect under future dangerousness question); Marquez v. Collins, 11 F.3d 1241, 1248 (5th Cir. 1994)(jealousy over wife's infidelity can be considered under future dangerousness); James v. Collins, 987 F.2d 1116, 1121-22 (5th Cir. 1993)(evidence of impoverished and abusive family history, redeeming character traits, cooperation with law enforcement and family ties adequately considered in special issues).

The Texas Court's determination that Newton's mitigating evidence could be considered under the existing special issues was neither incorrect nor unreasonable under AEDPA standards and

therefore the district court correctly denied relief.  No COA should issue in these circumstances. Newton's claim under <u>Penry II</u> is similarly without merit as the record reflects that no nullification instruction was given at her trial.

V.

For the reasons stated above, we deny Newton's Application for COA.

DENIED.