**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 19, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

——————————————————

No. 05-70022

——————————————————

GEORGE H. WHITAKER, III,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice, Correctional
Institutions Division,

Respondent-Appellee.

————————————————————————————————————

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Case No. 4:04-CV-00886

————————————————————————————————————

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:[*]

Petitioner George Whitaker, a Texas death row inmate, filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 with the United States District Court for the Southern District of Texas on March 4,

_____

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

2004.  The district court dismissed Whitaker's petition in an opinion and order dated March 18, 2005.  Whitaker now seeks a Certificate of Appealability ("COA") from the district court's decision on three of his claims for relief.

## I.  Background

Whitaker was convicted of capital murder by a Texas jury on March 26, 1996.  During the punishment phase of Whitaker's trial, Whitaker's counsel presented mitigation evidence in the form of testimony from a number of Whitaker's friends and relatives, who testified generally that Whitaker was a good-natured and law-abiding citizen.  Among the defense witnesses called during the punishment phase was Whitaker's mother, who testified that, among other things: (i) Whitaker's father had beaten him when he was a child; (ii) Whitaker had attempted to commit suicide on several occasions; and (iii) Whitaker fell from a moving truck and hit his head when he was a child.  Whitaker's trial counsel did not present any expert testimony during the punishment phase of the trial, and counsel did not have Whitaker

examined by a mental health expert at any point prior to or during the trial.[1]  At the conclusion of the punishment phase, Whitaker was sentenced to death.

Whitaker unsuccessfully appealed his sentence and conviction in the Texas state courts, and the United States Supreme Court denied Whitaker's petition for a writ of certiorari.  Whitaker then filed a state *habeas* petition, which was also denied by the state courts. While Whitaker's state *habeas* petition was pending, but after the deadline for filing a state petition had expired, Whitaker filed a "supplement" to his petition, which contained three additional claims (including one of the claims that he asserts in this court).  The Texas Court of Criminal Appeals dismissed Whitaker's supplemental petition as an abuse of the writ and

---

[1]In affidavits submitted in connection with Whitaker's state post-conviction proceedings, Whitaker's trial counsel stated that they did not retain a mental health expert because they felt that such an expert would not assist them in this case. Counsel also stated that they made a strategic decision not to offer expert testimony during the punishment phase of Whitaker's trial because "family members are always much more persuasive and are in a much better position than any expert to present a better and more complete picture of the applicant's background."

declined to address the merits of any of petitioner's additional claims.

Whitaker then filed his federal *habeas* petition in the district court. The district court granted the State's motion for summary judgment, dismissed Whitaker's petition in its entirety, and denied a COA. Whitaker now requests a COA from this court on three claims: (1) that trial counsel was ineffective for failing to adequately investigate and present expert mitigating evidence concerning Whitaker's mental condition at the punishment phase of his trial; (2) that the Texas death penalty statute, combined with the State's plea bargain offer of life imprisonment, imposed an unconstitutional burden on Whitaker's rights to a trial by jury and to plead not guilty, in violation of *United States v. Jackson*, 390 U.S. 570 (1968); and (3) that Whitaker was constitutionally entitled, under *Simmons v. South Carolina*, 513 U.S. 154 (1994), to inform the jury that, if sentenced to life imprisonment, rather than death, he would not be eligible for parole for 40 years.

## II. Legal Standard

Our review of Whitaker's request for a COA is governed by the Antiterrorism and Effective Death Penalty Act, which provides that a petitioner can appeal a district court's dismissal of a petition under 28 U.S.C. § 2254 only if either the district court or this court issues a COA. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A court can issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that under this standard, a COA should issue only when the petitioner demonstrates "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Thus, a petitioner seeking a COA must show that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Id.* at 338 (quoting *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000)).

When determining whether a petitioner has established an entitlement to a COA, we do not fully consider the underlying factual and legal bases in support of the petitioner's claims. *Id.* at 336. Rather, this court conducts only a limited, "threshold inquiry into the underlying merit of [the petitioner's] claims." *Id.* at 327. Finally, in capital cases, doubts over whether a COA should issue are to be resolved in favor of the petitioner. *See Newton v. Dretke*, 371 F.3d 250, 254 (5th Cir. 2004).

### III. Discussion

### A. Ineffective Assistance of Counsel

Whitaker first asserts that he is entitled to a COA on his claim that trial counsel was ineffective during the punishment phase of his trial for failing to adequately investigate and present mitigating evidence relating to his mental health and mental condition.

To succeed on a claim for ineffective assistance of counsel, Whitaker must show both that trial counsel's performance was constitutionally deficient and that he

was prejudiced by counsel's deficient performance.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  We measure the adequacy of counsel's performance against an objective standard of reasonable performance based on accepted professional norms.  *See Rompilla v. Beard*, 545 U.S. 374, 125 S. Ct. 2456, 2462 (2005) (citing *Strickland*, 466 U.S. at 688).  To establish prejudice, a petitioner must show that there is a reasonable probability that, absent counsel's deficient representation, the outcome of the proceedings would have been different.  *Strickland*, 466 U.S. at 694.  To assess prejudice during the sentencing phase of a capital proceeding, the court "reweigh[s] the evidence in aggravation against the totality of the available mitigating evidence."  *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

In this case, Whitaker argues that trial counsel conducted an inadequate investigation into potential mitigation evidence during the punishment phase of his trial.  Specifically, Whitaker asserts that, although counsel knew that Whitaker was beaten as a child,

7

periodically suffered seizures, had attempted to commit suicide on several occasions, and had suffered a head injury after falling from a moving truck as a child, counsel failed to have Whitaker examined by, or to present testimony from, a mental health expert during the punishment phase of his trial. Whitaker asserts that this constitutes deficient performance because, given this background information, any reasonable attorney would have at least had Whitaker examined by a mental health expert before concluding that it would not be helpful to use a mitigation or mental health expert at trial.

The state *habeas* court rejected Whitaker's claim. It held that trial counsel's failure to present mitigation evidence from a mental health expert or a mitigation expert did not rise to the level of ineffective assistance of counsel because the alleged failures resulted from the reasonable strategic decisions of trial counsel. The district court dismissed this claim because it found that Whitaker had failed to establish that the state court's decision was

8

an unreasonable application of *Strickland*.  The district court noted that the mitigating evidence in question was presented to the jury through the testimony of Whitaker's mother, and it found that Whitaker had failed to show how this evidence would have been presented differently by a mental health expert.  The district court also found that, because Whitaker had not produced an opinion from a mental health expert in support of his claims, the court could "only speculate on how a mental health expert could have developed punishment phase evidence that had a reasonable probability of a different result," and that "[s]uch speculation cannot serve as the basis for habeas relief."  *Whitaker v. Dretke*, No. 04-886, slip op. at 29 (S.D. Tex. Mar. 18, 2005); *see also id.* at 18 (noting that Whitaker's failure to show that an expert would have uncovered mitigating evidence different from that presented at trial was a "fatal flaw" of Whitaker's ineffective assistance claim).

We find that reasonable jurists could not debate the district court's resolution of Whitaker's

ineffective assistance of counsel claim, and, accordingly, we deny Whitaker's request for a COA on this claim. Although reasonable jurists could debate whether Whitaker's trial counsel should have had Whitaker examined by a mental health expert,[2] they could not debate the district court's finding that Whitaker cannot prevail on this claim because he has failed to make any showing of what additional mitigation evidence further investigation would have uncovered or how that evidence could have changed the outcome of the penalty phase of his trial.

This court has often stated that a petitioner alleging ineffective assistance of counsel on the basis of a failure to investigate "must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005)

---

[2]*See Roberts v. Dretke*, 356 F.3d 632, 639-40 (5th Cir. 2004) (finding that reasonable jurists could debate whether counsel's failure to develop evidence of mental illness was deficient performance in light of available information suggesting that defendant had mental problems).

10

(citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)); *Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000) (quoting *Green*, 882 F.2d at 1003).  Here, Whitaker has not made any showing of how further investigation, such as the retention of a mental health expert, would have helped his mitigation case.  This is not a case in which the petitioner asserts that trial counsel simply failed to uncover potential mitigation evidence about the petitioner's background.  Rather, Whitaker asserts that counsel was aware of the relevant information, which was presented to the jury through the testimony of Whitaker's mother, but that counsel's investigation fell short because counsel failed to investigate the potential mental health significance of this background information.  Yet Whitaker has failed to present any evidence, such as an affidavit from a mental health expert, to show that further investigation would have yielded any significant mental health mitigation evidence.  As the district court noted, without such evidence, we "can only speculate on how a mental health expert could have developed punishment phase evidence

11

that had a reasonable probability of a different result." *Whitaker*, No. 04-886, slip op. at 29.

Whitaker openly acknowledges this deficiency and attributes it to the failure of state *habeas* counsel.[3] The law is clear in this circuit, however, that ineffective assistance of state *habeas* counsel does not excuse a petitioner's failure to properly present his federal *habeas* claims. *See, e.g.*, *Elizalde v. Dretke*, 362 F.3d 323, 328-31 (5th Cir. 2004); *Martinez v. Johnson*, 255 F.3d 229, 240-41 (5th Cir. 2001); *Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001). Thus, Whitaker instead asserts that he does not need *actual* evidence of what a mental health expert could have added

---

[3]Whitaker also asserts that federal *habeas* counsel would be barred from introducing such evidence in support of his claims for the first time in the federal *habeas* proceedings because of the exhaustion doctrine. *See, e.g., Anderson v. Johnson*, 338 F.3d 382, 386-87 (5th Cir. 2003) (noting that exhaustion doctrine prevents a petitioner from presenting in federal court material additional evidence not presented to the state court). We need not decide here whether any new evidence would be barred by exhaustion principles, however, because Whitaker did not present any new evidence before either this court or the district court.

to his mitigation case.  Rather, he argues that this court can simply take judicial notice of the potential value of mental health mitigation evidence.

We decline Whitaker's invitation to find that a petitioner can establish ineffective assistance of counsel without any showing as to (1) what additional evidence would have been available had counsel conducted a reasonable investigation; or (2) how that evidence could have affected the outcome.  Although we recognize that testimony from a mental health expert is frequently a valuable source of mitigation evidence in capital sentencing proceedings, we simply cannot assume that such evidence would have been available or reasonably likely to lead to a different result in any particular case absent some indication as to what a mental health expert would have testified on the witness stand.  To do so would eviscerate *Strickland*, as it would permit a petitioner to establish a constitutional violation based on nothing more than speculation.  Accordingly, we deny Whitaker's request for a COA on his ineffective assistance of counsel claim.  Reasonable jurists could

13

not debate the district court's ultimate determination that Whitaker has not met his burden of showing that counsel's failure to further investigate or present mental health mitigation evidence constitutes ineffective assistance of counsel.

## B.    The *Jackson* Claim

Whitaker next argues that his death sentence is unconstitutional because the state's plea offer of life imprisonment impermissibly burdened his rights to plead not guilty and to be tried by a jury.  Whitaker first raised this claim in his untimely "supplement" to his original state *habeas* petition.  Although the state court clerk initially treated this supplemental filing as a part of Whitaker's original petition, the Texas Court of Criminal Appeals ultimately characterized the filing as a second or successive pleading and dismissed it as an abuse of the writ.  The district court dismissed this claim after finding both that the claim was procedurally defaulted and that it was ultimately meritless.

### 1.   *Procedural Default*

Where a state court has previously dismissed a *habeas* petitioner's claim pursuant to an adequate and independent state procedural ground, a federal court will not consider that claim unless the petitioner shows either (i) cause for the default and actual prejudice; or (ii) that a fundamental miscarriage of justice will result if the claim is not considered. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). This court has repeatedly held that a dismissal for abuse of the writ under Texas law is an adequate and independent state procedural ground for dismissal. *See Aguilar v. Dretke*, 428 F.3d 526, 533 (5th Cir. 2005).

Whitaker does not seriously dispute that his supplemental state *habeas* petition, which contained his *Jackson* claim, was untimely under Texas law. Nor does Whitaker attempt to show either cause and prejudice or a fundamental miscarriage of justice. Rather, Whitaker argues only that the court should not read the Texas statute governing the filing of capital *habeas* petitions "hyper-technically" to deem a supplemental petition successive when the supplemental petition is filed

before the original petition is decided on the merits. Because Whitaker neither disputes that the Texas Court of Criminal Appeals was permitted to treat his supplemental petition as a second or successive petition as a matter of Texas law nor asserts that the Texas procedural rule conflicts with federal law, we find that the district court properly dismissed this claim as procedurally defaulted.

## 2. *The Merits*

Even were Whitaker's *Jackson* claim not procedurally defaulted, we would still deny his request for a COA because reasonable jurists could not debate the district court's resolution of this claim on the merits. In *Jackson*, the Supreme Court held that a section of the Federal Kidnaping Act violated the defendant's Fifth and Sixth Amendment rights because it permitted the death penalty to be imposed on only those defendants who insisted on asserting their rights to plead not guilty and to be tried by a jury. 390 U.S. at 582-83.[4] The

---

[4]The *Jackson* court interpreted the statutory provision at issue in that case to prohibit a death sentence in cases where the defendant either pleaded

16

Court found that, because the statute reserved the death penalty exclusively for defendants who were convicted after a jury trial, it impermissibly penalized those defendants for choosing to assert their constitutional rights. *Id.* at 382-83. Whitaker asserts that the Texas capital sentencing scheme is analogous to the statutory scheme in *Jackson* because it permits a defendant charged with capital murder to avoid a possible death sentence only if the defendant agrees to plead guilty and the state agrees not to seek the death penalty.

Whitaker's argument is meritless. First, Whitaker ignores a crucial distinction between the statutory scheme in *Jackson* and the Texas capital sentencing scheme. In *Jackson*, a defendant could be sentenced to death only if he pleaded not guilty and insisted on a trial by jury; if the defendant either pleaded guilty or

---

guilty or waived the right to a jury trial. *See id.* at 581 ("Under the Federal Kidnaping Act, therefore, the defendant who abandons the right to contest his guilt before a jury is assured that he cannot be executed; the defendant ingenuous enough to seek a jury acquittal stands forewarned that, if the jury finds him guilty and does not wish to spare his life, he will die.").

waived a jury trial, a death sentence could not be imposed. Under Texas law, however, a defendant who pleads guilty to a capital offense still faces the possibility of a death sentence unless the prosecution agrees not to seek the death penalty. Thus, the Texas statute does not impermissibly reserve the death penalty for those defendants who assert their constitutional rights. *See Corbitt v. New Jersey*, 439 U.S. 212, 217 (1978); *Spinkellink v. Wainwright*, 578 F.2d 582, 608 (5th Cir. 1978). Second, *Jackson* does not prevent prosecutors from exercising their discretion to offer the possibility of a lesser sentence in exchange for a guilty plea, even in cases involving the death penalty. *See Brady v. United States*, 397 U.S. 742, 747-53 (1970); *Spinkellink*, 578 F.2d at 608-09. Accordingly, the prosecution's plea bargain offer in this case did not violate *Jackson*, and we deny Whitaker's request for a COA on this claim.

## C. The *Simmons* Claim

Whitaker's final claim is that the trial court erred by not instructing the jury that, if sentenced to

life imprisonment, Whitaker would not be eligible for parole for 40 years.  In *Simmons v. South Carolina*, 512 U.S. 154, 168-69, 171 (1994), the Supreme Court held that, in states where life *without* parole is a capital sentencing option, the defendant is entitled to inform the jury that the alternative to a death sentence is life without parole.  This court has repeatedly refused to extend *Simmons* to require that state courts allow capital defendants to inform the jury about parole eligibility where a life sentence would include a possibility of parole.  *See, e.g., Coleman v. Quarterman*, 456 F.3d 537, 544-45 (5th Cir. 2006); *Hughes v. Dretke*, 412 F.3d 582, 591-92 (5th Cir. 2005); *Miller v. Johnson*, 200 F.3d 274, 290-91 (5th Cir. 2000).  Accordingly, we find that reasonable jurists could not dispute the district court's resolution of this claim, and we deny Whitaker's request for a COA.

## IV.  Conclusion

For the reasons explained above, we find that reasonable jurists could not dispute the district court's resolution of Whitaker's claims, and we

therefore deny Whitaker's request for a COA in its entirety.