# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-11185

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

VAN ALLEN SMITH,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

October 14, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, ELROD, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Van Allen Smith was serving a 60-month term of supervised release when he physically assaulted his ex-girlfriend. An assistant public defender represented Smith in the resulting revocation proceeding. On the morning of his revocation hearing, Smith asked the district court to continue the hearing so that he could obtain private counsel—specifically, an attorney he met only the day before and had not yet hired. Believing that Smith's request was merely a delay tactic, the district court denied his motion to continue and ultimately revoked his term of supervised release, sending Smith back to prison for 50 months. Because the district court did not clearly abuse its discretion in denying the continuance, we affirm.

No. 15-11185

I.

On August 1, 2014, Smith began a 60-month term of supervised release as part of his sentence for a 2007 drug trafficking conviction. On July 28, 2015, Smith assaulted his ex-girlfriend; video footage shows Smith chasing her as she tries to run away, dragging her along the ground, and covering her nose and mouth with his hands. The victim screams for help throughout their encounter.

Smith was later charged with violating the conditions of his supervised release by committing another offense—"Assault/Family Violence/Impede Breath-Circulation" under Texas law. Represented by an assistant public defender, Smith initially appeared before the Northern District of Texas court on November 10, 2015. At his initial appearance, the court notified Smith of his detention hearing, scheduled for November 13, and his revocation hearing, scheduled for November 19. On November 13, the court ordered Smith detained until the revocation hearing six days later.

On the morning of Smith's revocation hearing, a private criminal defense attorney notified the assistant public defender that Smith's family wanted to hire him as Smith's counsel. At the revocation hearing, the assistant public defender asked the court to continue the hearing so that Smith could formally retain private counsel. The Government opposed any continuance, emphasizing that three witnesses were present to testify—one of whom was the victim, reluctantly testifying under subpoena. According to the Government, the victim had also received "unwelcome contact from [Smith's] family and friends regarding the hearing."

In support of his motion to continue, Smith explained that he met a new attorney in jail the previous day upon another inmate's recommendation. Smith said he was dissatisfied with his existing counsel because she had argued with his mother and made a mistake in an earlier proceeding,

2

No. 15-11185

prompting the presiding judge to correct her.  When the court described the idea of hiring a new attorney as "kind of . . . happenstance," Smith agreed, but emphasized that he had only a week to prepare for his revocation hearing.  The court noted that it was unclear from Smith's "on the fly" conversation with another attorney whether he had actually hired new counsel or could even afford to do so.  Believing Smith's representations were "an 11th hour tactic" to delay his revocation hearing, the court denied his motion to continue.  The district court ultimately found that Smith violated the conditions of his supervised release, revoked his term of supervised release, and sentenced him to 50-months imprisonment.

Smith now appeals the district court's judgment.  Smith first argues that a criminal defendant is entitled to his counsel of choice during revocation proceedings.  Smith next argues that the district court abused its discretion in refusing to continue his revocation hearing so that he could retain his desired counsel.

## II.

We review the denial of a criminal defendant's motion to continue to obtain counsel of choice for "clear abuse of discretion."  *United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980).

## III.

Without deciding whether a criminal defendant has a right to counsel of choice at a revocation hearing, we conclude that, even if Smith did have that right, the district court did not clearly abuse its discretion by denying his motion to continue.

Rule 32.1 of the Federal Rules of Criminal Procedure requires the court to inform a defendant facing potential revocation of his right to retain counsel or to request appointed counsel if he cannot obtain counsel on his own.  Fed. R. Crim. P. 32.1(b)(2)(D).  Notably, because a revocation proceeding is "not a part

No. 15-11185

of the criminal prosecution," *see Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973), "the full panoply of rights due a defendant during the criminal prosecution does not apply to revocation," *United States v. Hodges*, 460 F.3d 646, 651 (5th Cir. 2006) (alteration and ellipsis omitted) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)).

Even if a defendant's right to counsel at revocation were coextensive with the right to counsel guaranteed by the Sixth Amendment, a defendant is not absolutely entitled to his counsel of choice. *See Wheat v. United States*, 486 U.S. 153, 159 (1988) ("[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."). In the Sixth Amendment context, "last minute requests" to retain new counsel are not only "disfavored," *United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980), but also routinely denied, *see, e.g.*, *Newton v. Dretke*, 371 F.3d 250, 256 (5th Cir. 2004) (collecting cases).

Here, Smith moved to continue his revocation hearing on the morning of the proceeding. His stated reason was a desire to retain private counsel because he was unsatisfied with his court-appointed public defender after she misspoke at an earlier hearing and argued with his mother. But Smith had not yet retained new counsel; his family only "thought of retaining" another attorney on his behalf. Smith conceded that the "idea" of retaining another attorney was "kind of . . . happenstance." The Government, by contrast, was ready to proceed. Three witnesses were present to testify, including the victim, who had to be subpoenaed and can be seen in the video footage of the assault to be fearful of Smith. On these facts, the district court did not clearly abuse its discretion by denying the continuance.

We therefore AFFIRM the judgment of the district court.